DATE FILED: March 21, 2024 2:59 PM
FILING ID: 2D42092B7224A
CASE NUMBER: 2024CV30251

# EXHIBIT D

# Previous Avigation Easement For Zone 15

RECEPTION NO.   93113570         30.00
RECORDED IN COUNTY OF JEFFERSON  STATE OF COLORADO   7/30/93 10:00

6-1

# AVIGATION EASEMENT AGREEMENT
# ROCK CREEK RANCH FILING NO. 15

THIS AVIGATION EASEMENT AGREEMENT is made this 29th day of July, 1993, between RICHMOND HOMES, INC. I, (the "Grantor"), and the JEFFERSON COUNTY AIRPORT AUTHORITY OF COLORADO, the governing body of the Jefferson County Airport ("Airport") hereafter called the "Authority."

1-6

30

WHEREAS, Grantor is the owner in fee simple of that certain parcel of land situated in the County of Boulder, State of Colorado, which is part of the property known as Rock Creek Ranch, more specifically described in Exhibit "A" attached hereto and incorporated herein by this reference (the "Property"); and

WHEREAS, the Grantor and the Authority desire to enter into this Agreement for the Property which is around and about the Airport boundaries; and

WHEREAS, the Authority has accepted, enacted and proposed a master plan for the Airport dated January, 1988, such plan having been prepared by Barnard Dunkelberg & Company URS Engineers ("Master Plan").

NOW, THEREFORE, in consideration of the sum of Ten Dollars ($10.00), the mutual promises and agreements hereinafter set forth, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties agree as follows:

1. **Easement.** The Grantor for itself, its administrators, successors and assigns does hereby grant, bargain, sell and convey unto the Authority (the "Grantee") its successors and assigns, a non-exclusive easement and right of way appurtenant to the Airport for the passage of all aircraft by whom so ever owned and operated in the airspace above the surface of Grantor's property at a height which is regulated by the FAA as of the date of this Avigation Easement Agreement to an infinite height above the Property (the "Airspace Easement") together with the right to cause in the Airspace Easement such noise, vibration and all other effects that may be caused by the operation of aircraft landing at or taking off from or operating at or on the Airport. To have and to hold said Easement and right of way and all rights pertaining thereto unto the Grantee its successors and assigns until the Airport shall be abandoned or shall be ceased to be used for Airport purposes, or the occurrence of any of the contingencies set forth in Paragraph 2, then such easement shall revert back to Grantor, its successors and assigns, it being understood and agreed that this covenant and agreement shall run with the land.

Ret on back

2. <u>Limitations</u>. The Easement granted under Paragraph 1 shall remain in effect unless any of the following shall occur:

    a. The Airport shall cease being used as a "General Aviation Reliever Airport" as those terms are defined, as of the date of this Agreement, by the Federal Aviation Administration Rules and Regulations or any rules or regulations which may later be enacted which are more strict that current rules and regulations.

2✓

    b. The type and size of aircraft using the Airport as permitted under the Master Plan shall be changed or become inconsistent with such Master Plan, if there is an increase in passenger usage over that disclosed in the Master Plan, or the Airport is used for freight delivery.

    c. The Authority shall lengthen the existing runways, build additional runways or increase the load capacity of such runways beyond the proposed limits currently contained in the Master Plan.

    d. The noise contours contained in the Master Plan are exceeded by the sustained operation of aircraft in the Airspace Easement.

    e. The noise, vibration and all other effects of aircraft operation on the Property exceeds 60 ldn.

    If any of the above shall occur this Easement shall terminate without further notice.

3. <u>No Waiver</u>. Nothing stated in the foregoing grant shall allow the unlawful operation or passage of any aircraft by any person over and across the Property in violation of applicable Federal, State and Local Laws or Federal Aviation Administration Requirements, nor release any person from liability for damages or divest the Grantor its successors and assigns, from any right or cause of action for damages to any person or property for other claims resulting from such unlawful or negligent operation of any aircraft at any altitude over and across the Property.

4. <u>Grantor Not Bound</u>. The Parties acknowledge that the Property is or may be zoned residential. The Parties also acknowledge that the Master Plan designates certain "Instrument Critical Zones" and "Visual Runway Critical Zones" on the Property, which zones are not recommended by the Authority for residential use, and the Authority hereby acknowledges that portions of the Property as presently zoned, are not consistent with the "Land Use Compatibility Matrix" contained in the Master Plan at Appendix 1. Notwithstanding the Instrument Critical Zones and the Visual

Runway Critical Zones set forth in said Master Plan, Grantor shall not be bound by the Master Plan or any other limitations as to zoning, use and development of the Property. Nothing in this Agreement is intended to grant the Authority any surface easements, surface controls or other claims on or to the surface rights of the Property.

5. <u>Grantee to Inform Users</u>. As part of the consideration for the granting of this Easement, the Authority, together with its successors and assigns, shall use reasonable efforts to acquaint the Airport users with flight, noise, weight, and easement restrictions through its normal information dissemination process. The Authority shall not, however, be liable to any third party as a result of a failure to notify or otherwise disseminate such information unless such liability has occurred due to the gross negligence of the Authority.

3

6. <u>Reservation of Rights</u>. Grantor reserves the right to pursue any and all causes of action against the Grantee or any aircraft user, owner or operator arising from the Grantee's negligence or willful and wanton acts in operating aircraft or the Airport and nothing stated in the grant set forth above shall release any person from liability for damages or shall divest Grantor, its successors and assigns from any right or cause of action for damages to any person or property resulting from the unlawful negligent or willful and wanton operation of any aircraft at any altitude over and across the Property.

7. <u>Non-Exclusive Easement</u>. Nothing herein shall be construed to be a prohibition to the granting or additional easements by Grantor to third parties in the Airspace Easement, which would not interfere with the use of the Airspace Easement by the Grantee or in the Property or the airspace below the Airspace Easement.

IN WITNESS WHEREOF, the Grantor and the Authority, by and through their duly authorized representatives, have hereunto set their hands this 29th day of July, 1993.

RICHMOND HOMES INC. I

By: _____
Timothy R. Garrelts,
Executive Vice President

ATTEST:

By: _____
Brian A. Peterson
Executive Vice President

STATE OF COLORADO     )
CITY AND              ) ss.
COUNTY OF DENVER      )

The foregoing instrument was acknowledged before me this 26th day of March, 1993, by Timothy R. Garrelts as Executive Vice President, and Brian A. Peterson as Executive Vice President of Richmond Homes, Inc. I.

WITNESS my hand and official seal.

My commission expires: March 9, 1994

_____
Notary Public


JEFFERSON COUNTY AIRPORT
AUTHORITY

By: _____
Title: Chairman

-4-

ATTEST:

By: /s/ David C. Gordon
Title: Assistant Secretary

STATE OF COLORADO   )
                    ) ss.
COUNTY OF Jefferson )

The foregoing instrument was acknowledged before me this 29th day of July, 1993, by Edward N Haase as Chairman and David C. Gordon as Assistant Secretary of the Jefferson County Airport Authority.

WITNESS my hand and official seal.

My commission expires: 2-4-94

/s/ Traci Lutz
Notary Public

[Notary Seal: TRACI LUTZ, NOTARY PUBLIC, STATE OF COLORADO]

(avigea.10)

THAT PORTION OF SECTION 30, TOWNSHIP 1 SOUTH, RANGE 69 WEST, OF THE
SIXTH PRINCIPAL MERIDIAN IN THE TOWN OF SUPERIOR, COUNTY OF BOULDER,
STATE OF COLORADO, DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT ON THE NORTH LINE OF THE SOUTHWEST QUARTER OF
SAID SECTION 30 FROM WHICH THE WEST QUARTER CORNER OF SAID SECTION 30
BEARS SOUTH 89°17'51" WEST 81.34 FEET; THENCE ALONG SAID NORTH LINE
NORTH 89°17'51" EAST 12.96 FEET TO THE SOUTHWEST CORNER OF ROCK CREEK
RANCH FILING NO. 3, RECORDED AT RECEPTION NO. 1207111, BOULDER COUNTY
RECORDS; THENCE CONTINUING ALONG SAID NORTH LINE, SAID NORTH LINE
ALSO BEING THE SOUTHERLY BOUNDARY LINE OF SAID ROCK CREEK RANCH
FILING NO. 3, NORTH 89°17'51" EAST 1178.13 FEET TO THE SOUTHWEST
CORNER OF THE SOUTHEAST QUARTER OF THE NORTHWEST QUARTER OF SAID
SECTION 30; THENCE CONTINUING ALONG SAID NORTH LINE AND ALONG SAID
SOUTHERLY BOUNDARY LINE NORTH 89°17'51" EAST 617.65 FEET TO THE
WESTERLY RIGHT-OF-WAY LINE OF INDIANA STREET, AS RECORDED IN ROCK
CREEK RANCH DISTRICT STREETS FILING NO. 1 AT RECEPTION NO. 0000000,
BOULDER COUNTY RECORDS, SAID POINT BEING ALSO THE BEGINNING OF A
NON-TANGENT CURVE CONCAVE EASTERLY HAVING A RADIUS OF 840.00 FEET, A
RADIAL LINE FROM SAID POINT BEARS SOUTH 81°34'42" EAST; THENCE
SOUTHERLY AND SOUTHEASTERLY 354.83 FEET ALONG SAID CURVE AND ALONG
SAID WESTERLY RIGHT-OF-WAY LINE THROUGH A CENTRAL ANGLE OF 24°12'09";
THENCE LEAVING SAID WESTERLY RIGHT-OF-WAY LINE NON-TANGENT TO SAID
CURVE NORTH 74°13'09" EAST 80.00 FEET TO THE EASTERLY RIGHT-OF-WAY
LINE OF SAID INDIANA STREET, SAID POINT BEING THE BEGINNING OF A
NON-TANGENT CURVE CONCAVE EASTERLY HAVING A RADIUS OF 760.00 FEET, A
RADIAL LINE FROM SAID POINT BEARS NORTH 74°13'09" EAST; THENCE
NORTHERLY AND NORTHEASTERLY 304.41 FEET ALONG SAID CURVE AND ALONG
SAID EASTERLY RIGHT-OF-WAY LINE THROUGH A CENTRAL ANGLE OF 22°56'56"
TO THE BEGINNING OF A COMPOUND CURVE CONCAVE SOUTHEASTERLY HAVING A
RADIUS OF 30.00 FEET, A RADIAL LINE FROM SAID POINT BEARS SOUTH
82°49'55" EAST, ON THE SOUTHERLY BOUNDARY LINE OF ROCK CREEK RANCH
FILING NO. 13, RECORDED AT RECEPTION NO. 0000000 BOULDER COUNTY
RECORDS; THENCE LEAVING SAID EASTERLY RIGHT-OF-WAY LINE
NORTHEASTERLY, EASTERLY AND SOUTHEASTERLY 49.59 FEET ALONG SAID CURVE
AND ALONG SAID SOUTHERLY BOUNDARY LINE THROUGH A CENTRAL ANGLE OF
94°42'52"; THENCE ALONG THE SOUTHERLY AND WESTERLY BOUNDARY LINE OF
SAID ROCK CREEK RANCH FILING NO. 13 THE FOLLOWING COURSES:
NON-TANGENT TO SAID CURVE SOUTH 78°07'03" EAST 268.91 FEET TO THE
BEGINNING OF A TANGENT CURVE CONCAVE SOUTHWESTERLY HAVING A RADIUS OF
192.00 FEET; THENCE SOUTHEASTERLY 10.26 FEET ALONG SAID CURVE THROUGH
A CENTRAL ANGLE OF 03°03'41"; THENCE NON-TANGENT TO SAID CURVE SOUTH
14°56'38" WEST 94.99 FEET; THENCE SOUTH 20°56'16" EAST 24.33 FEET;
THENCE SOUTH 56°49'11" EAST 49.29 FEET; THENCE SOUTH 33°50'22" EAST
57.97 FEET; THENCE SOUTH 12°28'48" EAST 68.77 FEET; THENCE SOUTH
05°46'42" EAST 546.02 FEET; THENCE SOUTH 27°08'50" EAST 137.64 FEET;
THENCE SOUTH 33°51'47" EAST 99.10 FEET; THENCE SOUTH 39°16'16" EAST
217.84 FEET; THENCE LEAVING SAID WESTERLY BOUNDARY SOUTH 64°05'40"
WEST 315.94 FEET; THENCE SOUTH 24°15'52" WEST 53.16 FEET; THENCE
SOUTH 19°26'57" EAST 41.63 FEET; THENCE SOUTH 02°03'51" WEST 91.18
FEET; THENCE SOUTH 24°19'55" WEST 99.35 FEET; THENCE SOUTH 50°47'49"
WEST 217.77 FEET; THENCE SOUTH 54°56'29" WEST 71.80 FEET; THENCE
SOUTH 60°06'16" WEST 250.05 FEET; THENCE NORTH 89°42'53" WEST 231.71
FEET; THENCE SOUTH 00°17'07" WEST 309.30 FEET TO THE BEGINNING OF A
TANGENT CURVE CONCAVE EASTERLY HAVING A RADIUS OF 460.00 FEET; THENCE
SOUTHERLY 36.61 FEET ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF
04°33'37"; THENCE TANGENT TO SAID CURVE SOUTH 04°16'30" EAST 68.08
FEET; THENCE SOUTH 77°10'37" WEST 80.90 FEET TO THE BEGINNING OF A
NON-TANGENT CURVE CONCAVE NORTHWESTERLY HAVING A RADIUS OF 50.00
FEET, A RADIAL LINE FROM SAID POINT BEARS SOUTH 85°43'30" WEST;
THENCE SOUTHERLY AND SOUTHWESTERLY 75.32 FEET ALONG SAID CURVE
THROUGH A CENTRAL ANGLE OF 86°18'51" TO THE BEGINNING OF A TANGENT
REVERSE CURVE CONCAVE SOUTHEASTERLY HAVING A RADIUS OF 1350.00 FEET,
A RADIAL LINE FROM SAID POINT BEARS SOUTH 07°57'39" EAST; THENCE
SOUTHWESTERLY 375.77 FEET ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF
15°56'53" TO THE BEGINNING OF A TANGENT REVERSE CURVE CONCAVE
NORTHWESTERLY HAVING A RADIUS OF 750.00 FEET, A RADIAL LINE FROM SAID
POINT BEARS NORTH 23°54'31" WEST; THENCE SOUTHWESTERLY AND WESTERLY
298.13 FEET ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 22°46'31";
THENCE TANGENT TO SAID CURVE SOUTH 88°51'59" WEST 578.00 FEET; THENCE
NORTH 86°33'35" WEST 150.48 FEET; THENCE SOUTH 88°51'59" WEST 152.84
FEET TO THE EASTERLY RIGHT-OF-WAY OF McCASLIN BOULEVARD, RECORDED AT
RECEPTION NO. 760911 BOULDER COUNTY RECORDS; THENCE ALONG SAID
EASTERLY RIGHT-OF-WAY LINE OF McCASLIN BOULEVARD THE FOLLOWING
COURSES: NORTH 00°16'01" EAST 1258.26 FEET; THENCE SOUTH 89°04'51"
WEST 0.16 FEET; THENCE NORTH 00°17'07" EAST 1036.33 FEET TO THE
BEGINNING OF A TANGENT CURVE CONCAVE EASTERLY HAVING A RADIUS OF
1593.30 FEET; THENCE NORTHERLY 285.87 FEET ALONG SAID CURVE THROUGH A
CENTRAL ANGLE OF 10°16'48" TO THE POINT OF BEGINNING.

CONTAINING 125.084 ACRES, MORE OR LESS.