DATE FILED: March 21, 2024 2:59 PM
FILING ID: 2D42092B7224A
CASE NUMBER: 2024CV30251

# EXHIBIT F

# Previous Avigation Easement For Zone 19

#01551861 10/02/95 08:49 AM  REAL ESTATE RECORDS
F2080 CHARLOTTE HOUSTON BOULDER CNTY CO RECORDER

## AVIGATION EASEMENT AGREEMENT
## ROCK CREEK RANCH FILING NO. 19

#01556192 10/19/95 09:11 AM  REAL ESTATE RECORDS
F2084 CHARLOTTE HOUSTON BOULDER CNTY CO RECORDER

THIS AVIGATION EASEMENT AGREEMENT is made this 27th day of September, 1995, between RICHMOND HOMES, INC. I (the "Grantor"), and the JEFFERSON COUNTY AIRPORT AUTHORITY OF COLORADO, the governing body of the Jefferson County Airport (the "Airport"), hereafter called the "Authority".

WHEREAS, Grantor is the owner in fee simple of that certain parcel of land situated in the County of Boulder, State of Colorado, which is part of the property known as Rock Creek Ranch, more specifically described in Exhibit "A" attached hereto and incorporated herein by this reference (the "Property"), and

WHEREAS, the Grantor and the Authority desire to enter into this Agreement for the Property which is around and about the Airport boundaries; and

WHEREAS, the Authority has accepted, enacted and proposed a master plan for the Airport dated January, 1988, such plan having been prepared by Barnard Dunkelberg & Company URS Engineers ("Master Plan");

NOW, THEREFORE, in consideration of the sum of Ten Dollars ($10.00), the mutual promises and agreements hereafter set forth, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties agree as follow:

1. **Easement**. The Grantor for itself, its administrators, successors and assigns does hereby grant, bargain, sell and convey unto the Authority (the "Grantee"), its successors and assigns a non-exclusive easement and right of way appurtenant to the Airport for the passage of all aircraft by whomsoever owned and operated in the airspace above the surface of Grantor's property at a height which is regulated by the Federal Aviation Administration ("FAA") as of the date of this Avigation Easement Agreement to an infinite height above the Property (the "Airspace Easement") together with the right to cause in the Airspace Easement such noise, vibration and all other effects that may be caused by the operation of aircraft landing at or taking off from or operating at or on the Airport. To have and to hold said Easement and right of way and all rights pertaining thereto unto the Grantee, its successors and assigns until the Airport shall be abandoned or shall cease to be used for Airport purposes, or the occurrence of any of the contingencies set forth in Paragraph 2, then such easement shall revert back to Grantor, its successors and assigns, it being understood and agreed that this covenant and agreement shall run with the land.

2. **Limitations**. The Easement granted under Paragraph 1 shall remain in effect unless any of the following shall occur:

    a. The Airport shall cease being used as a "General Aviation Reliever Airport" as those terms are defined as of the date of this Agreement, by the FAA Rules and Regulations, or any rules or regulations which may later be enacted which are more strict than current rules and regulations.

5.2 4.2

    b.    The type and size of aircraft using the Airport as permitted under the Master Plan shall be changed or become inconsistent with such Master Plan, if there is an increase in passenger usage over that disclosed in the Master Plan, or the Airport is used for freight delivery.

    c.    The Authority shall lengthen the existing runways, build additional runways or increase the load capacity of such runways beyond the proposed limits currently contained in the Master Plan.

    d.    The noise contours contained in the Master Plan are exceeded by the sustained operation of aircraft in the Airspace Easement.

    e.    The noise, vibration and all other effects of aircraft operation on the Property exceeds 60 ldn.

If any of the above shall occur this Easement shall terminate without further notice.

3.    **No Waiver.** Nothing stated in the foregoing grant shall allow the unlawful operation or passage of any aircraft by any person over and across the Property in violation of applicable Federal, State and Local Laws or FAA Requirements, nor release any person from liability for damages, nor divest the Grantor, its successors or assigns from any right or cause of action for damages to any person or property for other claims resulting from such unlawful or negligent operation of any aircraft at any altitude over and across the Property

4.    **Grantor Not Bound.** The Parties acknowledge that the Property is or may be zoned residential. The Parties also acknowledge that the Master Plan designates certain "Instrument Critical Zones" and "Visual Runway Critical Zones" on the Property, which zones are not recommended by the Authority for residential use, and the Authority hereby acknowledges that portions of the Property as presently zoned are not consistent with the "Land Use Compatibility Matrix" contained in the Master Plan at Appendix 1. Notwithstanding the Instrument Critical Zones and the Visual Runway Critical Zones set forth in said Master Plan, Grantor shall not be bound by the Master Plan nor any other limitations as to zoning, use and development of the Property. Nothing in this Agreement is intended to grant the Authority any surface easements, surface controls, or other claims on or to the surface rights of the Property.

5.    **Grantee to Inform Users.** As part of the consideration for the granting of this Easement, the Authority, together with its successors and assigns, shall use reasonable efforts to acquaint the Airport users with flight, noise, weight, and easement restrictions through its normal information dissemination process. The Authority shall not, however, be liable to any third party as a result of a failure to notify or otherwise disseminate such information unless such liability has occurred due to the gross negligence of the Authority.

6.    **Reservation of Rights.** Grantor reserves the right to pursue any and all causes of action against the Grantee or any aircraft user, owner or operator arising from the Grantee's negligence or willful and wanton acts in operating aircraft or the Airport and nothing stated in the grant set forth above shall release any person from liability for damages nor shall divest Grantor, its successors and assigns from any right or cause of action for damages to any person or property resulting from the unlawful negligent or willful and wanton operation of any aircraft at any altitude over and across the Property.

7. <u>Non-Exclusive Easement</u>. Nothing herein shall be construed to be a prohibition to the granting or additional easements by Grantor to third parties in the Airspace Easement, which would not interfere with the use of the Airspace Easement by the Grantee or in the Property or the airspace below the Airspace Easement.

IN WITNESS WHEREOF, the Grantor and the Authority, by and through their duly authorized representatives, have hereunto set their hands this 27th day of September, 1995.

RICHMOND HOMES, INC. I, Grantor

By: _[signature]_
Title: VICE PRESIDENT OPERATIONS

ATTEST:

By: _[signature]_
Title: Secretary

STATE OF COLORADO   )
                    ) ss.
CITY AND COUNTY OF DENVER )

The foregoing instrument was acknowledged before me this 18th day of September, 1995, by N. Jeffrey Rainey as Vice President Operations and Brian A. Peterson as Secretary of RICHMOND HOMES, INC. I.

WITNESS my hand and official seal.

My commission expires: 3-19-99

_[signature]_ Notary Public

[Notary Seal: JANE E. MORGAN, NOTARY PUBLIC, STATE OF COLORADO]

JEFFERSON COUNTY AIRPORT AUTHORITY

By: _[signature]_
Title: Airport Manager

S-4 4-4

STATE OF COLORADO        )
                         ) ss.
COUNTY OF JEFFERSON      )

    The foregoing instrument was acknowledged before me this 28th day of September, 1995 by David C. Gordon as Airport Manager of JEFFERSON COUNTY AIRPORT AUTHORITY.

    WITNESS my hand and official seal.

    My commission expires 2-4-98.

*Traci Lutz*
Notary Public

[Notary Seal: NOTARY PUBLIC / TRACI LUTZ / STATE OF COLORADO]

5-5

THAT Richmond Homes, Inc. I, a Delaware Corporation the owner of that real property situated in Superior, Colorado and lying within the exterior boundary of Rock Creek Ranch  Filing No. 19, more particularly described as follows:

LEGAL DESCRIPTION

A parcel of land located in the South half of Section 30 and the North half of Section 31, Township 1 South, Range 69 West of the Sixth Principal Meridian, Town of Superior, County of Boulder, State of Colorado, more particularly described as follows:

Commencing at the Northeast corner of said Section 31;
thence S89°54'23"W along the North line of the Northeast quarter of said Section 31, 1661.02 feet to the Point of Beginning;
thence S01°07'32"E, 259.81 feet to a point of curve;
thence along said curve to the left having a radius of 310.00 feet, a central angle of 67°49'03", 366.93 feet to a point of tangent;
thence S68°56'35"E along said tangent, 500.99 feet to the Northwest corner of Rock Creek Ranch Filing No. 18;
thence S21°03'25"W along the westerly line of said Rock Creek Ranch Filing No. 18, 80.00 feet;
thence N68°56'35"W, 450.02 feet to a point of curve;
thence along said curve to the left having a radius of 30.00 feet, a central angle of 88°46'03", 46.48 feet;
thence N64°44'22"W, 60.08 feet to a point on a curve;
thence along said curve to the left having a radius of 30.00 feet, a central angle of 81°47'13" (the chord of which bears N18°36'13"W, 39.28 feet), 42.82 feet to a point of reverse curve;
thence along said curve to the right having a radius of 390.00 feet, a central angle of 26°05'21", 177.58 feet;
thence S47°39'06"W, 925.93 feet;
thence S56°28'36"W, 995.43 feet;
thence S76°07'16"W, 286.24 feet;
thence S72°51'03"W, 80.00 feet;
thence N17°08'57"W, 162.72 feet to a point of curve;
thence along said curve to the right having a radius of 1890.00 feet, a central angle of 01°44'23", 57.39 feet to a point of reverse curve;
thence along said curve to the left having a radius of 30.00 feet, a central angle of 84°29'55", 44.24 feet;
thence N19°20'25"W, 50.81 feet to a point on a curve;
thence along said curve to the left having a radius of 30.00 feet, a central angle of 93°56'34" (the chord of which bears N34°51'21"E, 43.86 feet), 49.19 feet to a point of reverse curve;
thence along said curve to the right having a radius of 1890.00 feet, a central angle of 01°59'25", 65.65 feet to a point of tangent;
thence N10°07'31"W along said tangent, 101.46 feet to a point of curve;
thence along said curve to the left having a radius of 260.00 feet, a central angle of 35°50'37", 162.65 feet to a point of tangent;
thence N45°58'08"W along said tangent, 117.25 feet to a point of curve;
thence along said curve to the right having a radius of 440.00 feet, a central angle of 33°54'42", 260.42 feet;
thence S89°38'26"W, 19.14 feet to the West line of the Northeast quarter of the Northwest quarter of said Section 31;
thence N00°21'34"W along said West line, 778.76 feet to the Northwest corner of the Northeast quarter of the Northwest quarter of said Section 31;
thence S88°51'59"W along the North line of the Northwest quarter of the Northwest quarter of said Section 31, 71.78 feet to a point on a curve;
thence along a curve to the left having a radius of 850.00 feet, a central angle of 03°01'31" (the chord of which bears N67°36'14"E, 44.88 feet), 44.88 feet to a point of reverse curve;
thence along said curve to the right having a radius of 1250.00 feet, a central angle of 06°16'01", 136.72 feet;
thence N80°22'46"E, 150.59 feet to a point on a curve;
thence along said curve to the right having a radius of 1238.00 feet, a central angle of 02°05'59" (the chord of which bears N80°19'34"E, 45.37 feet), 45.37 feet to a point of compound curve;
thence along said curve to the right having a radius of 50.00 feet, a central angle of 95°48'46", 83.61 feet;
thence N76°17'06"E, 81.20 feet to a point on a curve;
thence along said curve to the right having a radius of 50.00 feet, a central angle of 94°18'04" (the chord of which bears N42°52'32"E, 73.31 feet), 82.29 feet to a point of compound curve;
thence along said curve to the right having a radius of 1250.00 feet, a central angle of 00°50'06", 18.22 feet to a point of tangent;
thence S89°08'20"E along said tangent, 1482.66 feet;
thence S04°33'54"E, 150.48 feet;
thence S89°08'20"E, 50.82 feet to a point of curve;
thence along said curve to the right having a radius of 50.00 feet, a central angle of 88°00'48", 76.81 feet;
thence N84°45'13"E, 80.21 feet;
thence S01°07'32"E, 15.83 feet to the Point of Beginning containing 68.843 acres, more or less.

That it has caused said real property to be laid out and surveyed as Rock Creek Ranch  Filing No. 19, and does hereby dedicate to the Superior Metropolitan District No. 3 and set apart all of the streets, alleys, and other public ways and places as shown on the accompanying plat to the use of the public forever, and does hereby dedicate to the Superior Metropolitan District No. 3 those portions of said real property which are indicated as easements on the accompanying plat.  Said easements and Tracts A, B, C, D, and F are to be owned by Superior Metropolitan District No. 3 unless and until such time as said District is dissolved or otherwise fails to comply with the terms of its service plan and upon such dissolution or failure, ownership in all streets, alleys and other public ways and all easements or tracts hereby dedicated shall vest in the Town of Superior.

EXHIBIT 'A'