DATE FILED: March 21, 2024 2:59 PM
FILING ID: 2D42092B7224A
CASE NUMBER: 2024CV30251

# EXHIBIT G

# Previous Avigation Easement For Zone 21

5-1

#01567720 12/07/95 08:28 AM   REAL ESTATE RECORDS
F2094 CHARLOTTE HOUSTON BOULDER CNTY CO RECORDER

# AVIGATION EASEMENT AGREEMENT
# ROCK CREEK RANCH FILING NO. 21

THIS AVIGATION EASEMENT AGREEMENT is made this 6th day of December, 1995, between RICHMOND HOMES, INC. I (the "Grantor"), and the JEFFERSON COUNTY AIRPORT AUTHORITY OF COLORADO, the governing body of the Jefferson County Airport (the "Airport"), hereafter called the "Authority".

WHEREAS, Grantor is the owner in fee simple of that certain parcel of land situated in the County of Boulder, State of Colorado, which is part of the property known as Rock Creek Ranch, more specifically described in Exhibit "A" attached hereto and incorporated herein by this reference (the "Property"); and

WHEREAS, the Grantor and the Authority desire to enter into this Agreement for the Property which is around and about the Airport boundaries; and

WHEREAS, the Authority has accepted, enacted and proposed a master plan for the Airport dated January, 1988, such plan having been prepared by Barnard Dunkelberg & Company URS Engineers ("Master Plan");

NOW, THEREFORE, in consideration of the sum of Ten Dollars ($10.00), the mutual promises and agreements hereafter set forth, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties agree as follow:

1.  Easement. The Grantor for itself, its administrators, successors and assigns does hereby grant, bargain, sell and convey unto the Authority (the "Grantee"), its successors and assigns a non-exclusive easement and right of way appurtenant to the Airport for the passage of all aircraft by whomsoever owned and operated in the airspace above the surface of Grantor's property at a height which is regulated by the Federal Aviation Administration ("FAA") as of the date of this Avigation Easement Agreement to an infinite height above the Property (the "Airspace Easement") together with the right to cause in the Airspace Easement such noise, vibration and all other effects that may be caused by the operation of aircraft landing at or taking off from or operating at or on the Airport. To have and to hold said Easement and right of way and all rights pertaining thereto unto the Grantee, its successors and assigns until the Airport shall be abandoned or shall cease to be used for Airport purposes, or the occurrence of any of the contingencies set forth in Paragraph 2, then such easement shall revert back to Grantor, its successors and assigns, it being understood and agreed that this covenant and agreement shall run with the land.

2.  Limitations. The Easement granted under Paragraph 1 shall remain in effect unless any of the following shall occur:

    a   The Airport shall cease being used as a "General Aviation Reliever Airport" as those terms are defined as of the date of this Agreement, by the FAA Rules and Regulations, or any rules or regulations which may later be enacted which are more strict than current rules and regulations.

  b. The type and size of aircraft using the Airport as permitted under the Master Plan shall be changed or become inconsistent with such Master Plan, if there is an increase in passenger usage over that disclosed in the Master Plan, or the Airport is used for freight delivery.

  c. The Authority shall lengthen the existing runways, build additional runways or increase the load capacity of such runways beyond the proposed limits currently contained in the Master Plan.

  d. The noise contours contained in the Master Plan are exceeded by the sustained operation of aircraft in the Airspace Easement.

  e. The noise, vibration and all other effects of aircraft operation on the Property exceeds 60 ldn.

  If any of the above shall occur this Easement shall terminate without further notice.

3. **No Waiver.** Nothing stated in the foregoing grant shall allow the unlawful operation or passage of any aircraft by any person over and across the Property in violation of applicable Federal, State and Local Laws or FAA Requirements, nor release any person from liability for damages, nor divest the Grantor, its successors or assigns from any right or cause of action for damages to any person or property for other claims resulting from such unlawful or negligent operation of any aircraft at any altitude over and across the Property.

4. **Grantor Not Bound.** The Parties acknowledge that the Property is or may be zoned residential. The Parties also acknowledge that the Master Plan designates certain "Instrument Critical Zones" and "Visual Runway Critical Zones" on the Property, which zones are not recommended by the Authority for residential use, and the Authority hereby acknowledges that portions of the Property as presently zoned are not consistent with the "Land Use Compatibility Matrix" contained in the Master Plan at Appendix I. Notwithstanding the Instrument Critical Zones and the Visual Runway Critical Zones set forth in said Master Plan, Grantor shall not be bound by the Master Plan nor any other limitations as to zoning, use and development of the Property. Nothing in this Agreement is intended to grant the Authority any surface easements, surface controls, or other claims on or to the surface rights of the Property.

5. **Grantee to Inform Users** As part of the consideration for the granting of this Easement, the Authority, together with its successors and assigns, shall use reasonable efforts to acquaint the Airport users with flight, noise, weight, and easement restrictions through its normal information dissemination process. The Authority shall not, however, be liable to any third party as a result of a failure to notify or otherwise disseminate such information unless such liability has occurred due to the gross negligence of the Authority.

6. **Reservation of Rights.** Grantor reserves the right to pursue any and all causes of action against the Grantee or any aircraft user, owner or operator arising from the Grantee's negligence or willful and wanton acts in operating aircraft or the Airport and nothing stated in the grant set forth above shall release any person from liability for damages nor shall divest Grantor, its successors and assigns from any right or cause of action for damages to any person or property resulting from the unlawful negligent or willful and wanton operation of any aircraft at any altitude over and across the Property.

7. <u>Non-Exclusive Easement</u>. Nothing herein shall be construed to be a prohibition to the granting or additional easements by Grantor to third parties in the Airspace Easement, which would not interfere with the use of the Airspace Easement by the Grantee or in the Property or the airspace below the Airspace Easement.

IN WITNESS WHEREOF, the Grantor and the Authority, by and through their duly authorized representatives, have hereunto set their hands this ___6th___ day of ___December___, 1995.

RICHMOND HOMES, INC. I, Grantor

By: _____
Title: N. JEFFREY RAINEY, VICE PRESIDENT

ATTEST:

By: _____
Title: Secretary

STATE OF COLORADO      )
                       ) ss.
CITY AND COUNTY OF DENVER  )

The foregoing instrument was acknowledged before me this ___4th___ day of ___December___, 1995, by ___N. JEFFREY RAINEY___ as ___VICE PRESIDENT___ and ___BRIAN A PETERSEN___ as ___SECRETARY___ of RICHMOND HOMES, INC. I.

WITNESS my hand and official seal.

My commission expires: ___3-19-97___

_____
Notary Public



My Commission Expires Feb. 4, 1998

JEFFERSON COUNTY AIRPORT AUTHORITY

By: _____
Title: Assistant Secretary

STATE OF COLORADO
COUNTY OF JEFFERSON

The foregoing instrument was acknowledged before me this 6th day of December, 1995 by David C. Gordon as Assistant Secretary for the JEFFERSON COUNTY AIRPORT AUTHORITY.

WITNESS my hand and official seal.

- 3 -

_____
Notary Public

EXHIBIT A

S-4

Legal Description

A parcel of land located in Section 31, Township 1 South, Range 69 West of the Sixth Principal Meridian, Town of Superior, County of Boulder, State of Colorado, more particularly described as follows:

Commencing at the Northeast corner of said Section 31 and considering the East line of the Northeast corner of said Section 31 to bear S00°17'48"W with all bearings contained herein relative thereto; thence S51°49'52"W, 1295.10 feet to the Point of Beginning, said being on the boundary of Rock Creek Ranch Filing No. 18;
thence along the boundary of said Rock Creek Ranch Filing No. 18 the following four (4) courses:

1. thence S60°15'30"W, 340.00 feet;
2. thence S25°26'34"W, 654.99 feet;
3. thence S00°00'00"E, 1300.00 feet;
4. thence N90°00'00"E, 1386.34 feet;

thence S31°45'41"W, 988.51 feet to a point of curve;
thence along said curve to the left having a radius of 3669.72 feet, a central angle of 08°06'09", 518.95 feet to a point on a curve;
thence along said curve to the left having a radius of 1480.00 feet, a central angle of 50°51'08" (the chord of which bears S89°10'14"W, 1270.87 feet), 1313.56 feet to a point of compound curve;
thence along said curve to the left having a radius of 3769.90 feet, a central angle of 10°44'40", 706.95 feet;
thence N50°06'06"W, 452.16 feet;
thence N49°39'03"W, 626.83 feet to a point on a curve;
thence along said curve to the right having a radius of 30.00 feet, a central angle of 85°03'06" (the chord of which bears N06°38'24"W, 40.56 feet), 44.53 feet to a point of reverse curve.
thence along said curve to the left having a radius of 856.32 feet, a central angle of 07°14'29", 108.23 feet to a point of compound curve;
thence along said curve to the left having a radius of 1540.00 feet, a central angle of 39°52'01", 1071.54 feet to a point of tangent;
thence N11°13'20"W along said tangent, 28.89 feet;
thence S82°20'08"W, 80.15 feet to a point on a curve;
thence along said curve to the left having a radius of 30.00 feet, a central angle of 87°57'55" (the chord of which bears N55°12'18"W, 41.67 feet), 46.06 feet;
thence N07°50'58"W, 80.02 to a point on a curve;
thence along said curve to the left having a radius of 30.00 feet, a central angle of 83°31'02" (the chord of which bears N39°03'14"E, 39.96 feet), 43.73 feet to a point of reverse curve;
thence along said curve to the right having a radius of 590.00 feet, a central angle of 13°07'31", 135.16 feet to a point of tangent;
thence N10°25'14"E along said tangent, 206.61 feet to a point of curve;
thence along said curve to the left having a radius of 960.00 feet, a central angle of 27°34'11", 461.94 feet to the Southwest corner of Rock Creek Ranch Filing No. 19;

# EXHIBIT A

5 - 5

thence along the southerly boundary of said Rock Creek Ranch Filing No. 19 the following nine (9) courses:

1. thence N72°51'03"E, 80.00 feet;
2. thence N76°07'16"E, 286.24 feet;
3. thence N56°28'36"E, 995.43 feet;
4. thence N47°39'06"E, 925.93 feet to a point on a curve;
5. thence along said curve to the left having a radius of 390.00 feet, a central angle of 26°05'20" (the chord of which bears S46°27'09"E, 176.05 feet), 177.58 feet to a point of reverse curve;
6. thence along said curve to the right having a radius of 30.00 feet, a central angle of 81°47'12", 42.82 feet;
7. thence S64°44'22"E, 60.08 feet to a point on a curve;
8. thence along said curve to the right having a radius of 30.00 feet, a central angle of 88°46'02" (the chord of which bears N66°40'24"E, 41.97 feet), 46.48 feet to a point of tangent;
9. thence S68°56'35"E along said tangent, 450.02 feet to the Point of Beginning containing 167.424 acres, more or less.

RCR\LEGALS\21PLAT.LEG