IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:24-cv-00951

ANDREA LOCKHART, et al.,

    Plaintiffs,

v.

THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF JEFFERSON, COLORADO, as successor in interest to the Jefferson County Airport Authority,

    Defendant.

## DEFENDANT'S MOTION TO DISMISS THE COMPLAINT AND ACTION

### INTRODUCTION

The Complaint against the Board of County Commissioners of the County of Jefferson, Colorado ("Defendant" or "County") should be dismissed under Fed. R. Civ. P. 12(b)(6) for failure to state a claim.[1] Plaintiffs' claims relating to operations at Rocky Mountain Metropolitan Airport ("RMMA" or the "Airport")—like the identical claims in the parallel action filed by the same counsel for other Boulder County residents in *Drew Phillip Fuller, et al. v. Jefferson County, Colorado*; Case No. 1:24-cv-00157-DDD-STV (the "Fuller Action")—have no merit. Plaintiffs moved to property close to the Airport with full knowledge of the preexisting Airport and its operations. *See* Complaint, ECF No. 1-1, ¶¶ 38-46. Further, RMMA's daily operations have not so significantly increased in size and scope as to impose an unexpected burden on the surrounding

---

[1] Pursuant to Judge Domenico's Practice Standard (III)(D)(1), the County conferred with Plaintiffs' counsel regarding this motion via teleconference on April 9, 2024. Plaintiffs oppose the motion to dismiss.

1

community. *See id.* at ¶¶ 51-53 (citing Complaint Ex. H, ECF No. 1-9). And yet, Plaintiffs contend that they are entitled to compensation for alleged injuries to their properties caused by Airport operations. *See id.* at ¶¶ 95-143. The Court should dismiss this action for the following reasons:

***First***, Plaintiffs' claims are time-barred. Plaintiffs seek damages from the County for inverse condemnation based on their theory that the Airport allegedly generated more noise based on a 2000 Airport Master Plan versus a 1988 Master Plan. *See id.* at ¶¶ 50-53. But even assuming that is true (and the County contests this), the fact remains that the 2000 Airport Master Plan was issued in 2000—nearly twenty-four years before the Fuller Action and this action were filed (in December 2023 and March 2024, respectively). Plaintiffs even concede that the 2000 Master Plan was loaded onto the County website by 2020, which is more than two years before this case was filed. *See, e.g.,* Complaint Ex. H, at 16 (acknowledging that the 2000 Master Plan "was added to the [Airport] websites in 2020" at the request of the [Plaintiffs'] Home Owners Association). This is fatal to Plaintiffs' claim because of the operative two-year statute of limitations for suits against a county government in C.R.S. section 13-80-102(1)(h).

***Second***, the Complaint fails to allege a factual predicate for their inverse condemnation claims. The Complaint's "formulaic recitation of the elements of a cause of action" for inverse condemnation "will not do," and the Court is "free to reject plaintiff's legal conclusions couched as factual allegations." *Andrews v. United States*, 108 Fed. Cl. 150, 159 (2012) (cleaned up).

***Third***, Plaintiffs' claims are preempted by federal law. The challenges to the noise generated by aircraft utilizing the Airport are preempted by the Airport Noise and Control Act, 49 U.S.C. § 47521, *et seq.* ("ANCA"), and its implementing regulations. The challenges to the use of leaded fuel for general-aviation aircraft and the pilot training exercises at the Airport are

2

preempted by the Airport and Airway Improvement Act, 49 U.S.C. § 47107 ("AAIA"), and the County's related Grant Assurance obligations, including the requirement in Grant Assurance 22 to make the airport reasonably available and accessible to all users such as general aviation aircraft, which, for legal **and safety** reasons, must use leaded fuel until the U.S. Federal Aviation Administration ("FAA") eventually authorizes use of unleaded fuel in general aviation aircraft. The AAIA also requires that the Airport be available to all aeronautical uses, including training exercises.

## **STATEMENT OF FACTS**

On March 21, 2024, Plaintiffs filed their Complaint in Boulder County District Court, Case No. 2023CV31075, seeking damages for inverse condemnation based on noise and lead allegedly attributable to Airport operations. *See* Complaint, ¶¶ 94-143. On April 10, 2024, the County timely removed the case to this Court. ECF No. 1.

The Complaint alleges that certain events that occurred after the Rock Creek development was created which caused increased airport noise and related activity that has somehow damaged their property interests. Plaintiffs tie this alleged change-in-circumstances to an Airport Master Plan published in 2000 which Plaintiffs claim is evidence of an increase in noise generated by the Airport since the prior Airport Master Plan was published in 1988. Specifically, Plaintiffs point to state court litigation (the "Rock Creek HOA litigation") over certain easements that the developer of Plaintiffs' neighborhood had issued to the County's predecessor in the 1990s. The Complaint alleges:

> 51. . . . The District Court found that the easements incorporated noise contour levels from an Airport Master Plan published in 1988 and recognized that "the Ldn 601 contour is usually regarded as the critical contour at general aviation airports." The District Court further found that the 1988 Master Plan provided that

3

its contours represented the most severe conditions for both present and future development of the Airport, and it heard testimony that those contours were designed to represent noise levels that would never be exceeded.

52.   The District Court further found that the 60 Ldn Contour included in the 1988 Master Plan did not cover any property in the Rock Creek neighborhood. However, a later Master Plan published in 2000 covered approximately 39 acres of residential property in the Rock Creek neighborhood.

*See also* Complaint Ex. J, ECF No. 1-11, ¶¶ 42 (the lower "court concluded that the fact 'Rock Creek property falls within the 60 Ldn Contour provided in the 2000 Master Plan, but not within the 60 Ldn Contour provided in the 1988 Master Plan,' means that the noise contours in the 2000 Master Plan exceeded those in the 1988 Master Plan"), 47 (affirming the finding that easement "Limitation D was triggered . . . for those nine easements that . . . lay within the 60 Ldn noise contour in the 2000 Master Plan").

I.   **FEDERAL CONTROL OVER AVIATION AND AIRPORTS.**

The federal government enjoys plenary power over air transportation in the United States. "Planes do not wander about in the sky like vagrant clouds. They move only by federal permission, subject to federal inspection, in the hands of federally certified personnel and under an intricate system of federal commands." *Nw. Airlines v. State of Minn.*, 322 U.S. 292, 303 (1944) (Jackson, J., concurring).

A.   *The Airport and Airway Improvement Act and the Current Requirement to Allow for the Use of Leaded Fuel for General Aviation Aircraft.*

Many of our nation's airports, including RMMA, are federally funded through federal grants or other payments, *see* Complaint, ¶ 36, a funding system that relieves local taxpayers and airport patrons from having to pay all of the considerable expenses that exist to construct, maintain and operate an airport. FAA provides grants to airport sponsors so that they can build and improve

4

airports to "maintain a safe and efficient nationwide" airport system. 49 U.S.C. §§ 47104(a), 47105(a); *see also id.* at § 47102(26) (defining "sponsor").

49 U.S.C. section 47101, *et seq.*, provides for federal airport financial assistance for the development of public-use airports under the Airport Improvement Program ("AIP"), which is established by the AAIA. The AAIA sets forth assurances to which an airport sponsor agrees as a condition of receiving Federal financial assistance. Grant Assurance 5 requires that the airport sponsor retain all rights and powers necessary to ensure the continued operation of the airport consistent with its Federal obligations. *Platinum Aviation v. Bloomington-Normal Airport Auth.*, 16-06-09, 2007 WL 9666187 (F.A.A.), *2 (June 4, 2007). Grant Assurance 22(a) requires sponsors to "make the airport available as an airport for public use on reasonable terms and without unjust discrimination to all types, kinds and classes of aeronautical activities." *Palm Beach County v. FAA*, 53 F. 4th 1318, 1321 (11th Cir. 2022). FAA enforces the Grant Assurance obligations by several methods, including the withholding of future AIP grants. *See* 49 U.S.C. § 47111.

Aviation gasoline (avgas) is the aviation fuel most commonly used in piston-engine aircraft within the general aviation community. Avgas remains the only transportation fuel in the United States to contain lead. More than 222,600 registered piston-engine aircraft can operate on leaded avgas. The most common and reliable type of avgas is 100 octane Low Lead, also known as 100LL. **Unless and until the FAA certifies general aviation aircraft engines to use unleaded fuel, those aircraft are required to operate with leaded fuel**. And, a ban or restriction on the sale or use of 100LL avgas at a federally obligated airport is inconsistent with Grant Assurance 22. *See* Exhibits 1, 2 and 3 to Declaration of M. Roy Goldberg, Esq. (Exhibit A hereto). In short, the County cannot unilaterally refuse to sell or allow to be sold leaded fuel at the Airport.

5

### B.     *The Airport Noise and Capacity Act.*

In 1973, the Supreme Court held that the pervasive scope of federal regulation of the airways implied a congressional intention to preempt municipal aircraft noise restrictions based upon the police power. *City of Burbank v. Lockheed Air Terminal, Inc.,* 411 U.S. 624, 638-40 (1973) (upholding injunction barring municipal aircraft crews as subject to federal preemption). The ANCA generally prohibits "airport noise and access restrictions on the operation of stage 2 and stage 3 aircraft" unless those restrictions meet stringent statutory requirements. *See* 49 U.S.C. § 47524. The FAA implements ANCA through 14 C.F.R. Part 161, which sets out the process for analyzing and approving new noise restrictions. *See* 14 C.F.R. §§ 161.101 to .417.

The County is subject to the ANCA—both as a general matter and because of its Grant Assurance obligations. Grant Assurance 1(a) requires sponsors to "comply with all applicable Federal laws, regulations, executive orders, policies, guidelines, and requirements as they relate to the application, acceptance and use of Federal funds for [a] project including but not limited to . . . Title 49, U.S.C., subtitle VII, as amended." *Id.* at 2. *See Palm Beach Cnty. v. FAA*, 53 F. 4th 1318, 1337-38 (11th Cir. 2022) (upholding the FAA determination that airport's restrictions on aircraft noise violated Grant Assurances). Significantly, ANCA established the ceiling on aircraft noise even though it does not specifically apply to piston aircraft.

## II.   PLAINTIFFS' CLAIMS AGAINST LEADED FUEL AND AIRPORT-GENERATED NOISE.

Plaintiffs claim to own properties "generally located northwest of the Airport, following in a direct line from the runways at the Airport." Complaint, ¶ 33. The Complaint seeks "just compensation" for the homeowners who" claim to "have been substantially deprived of the use and enjoyment of their homes and properties (collectively, 'Properties') because of Defendant's

ongoing airport operations." *Id.* at ¶ 1.  Plaintiffs allege that "increased Airport Operations have caused excessive noise, vibrations, fuel pollution, and other airplane-created impacts (collectively, 'Airport Impacts'), which directly and substantially interfere with the Homeowners' use and enjoyment of their Properties and that significantly affect the marketability and value of the Properties." *Id.* at ¶ 12.

The Complaint alleges that flights operating at the Airport "drop lead particulates found in the aviation fuel used by small planes directly onto the Properties, causing an ongoing physical occupation of the Properties, raising serious health concerns, and again directly and substantially interfering with the Homeowners' use and enjoyment of their Properties and significantly affecting the marketability and value of the Properties." *Id.* at ¶ 13.

Plaintiffs also assert that "[p]lanes flying in and within the vicinity of the Homeowners' Airspace and Properties often exceed more than 90 and have exceeded 100 decibels; numerous flights create noise in excess of 60 decibels at the ground level." *Id.* at ¶ 81.  Plaintiffs add that, "[i]n addition to the noise and vibrations caused by flights taken by commercial, private, military, and medical aircrafts, the flight schools put pilots on repetitive 'touch-and-go' routes where airplanes engage in a lopping takeoff and landing flight training, which can include multiple planes flying in the same racetrack pattern over the Properties." *Id.* at ¶ 82.

## APPLICABLE STANDARD

A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  A complaint must contain enough allegations of fact "to state a claim to relief that is plausible on its face." *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see*

7

*also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  In determining whether a complaint meets this standard, courts take well-pleaded facts as true and view them in the light most favorable to the plaintiff.  *Frey v. Town of Jackson, Wyo.*, 41 F.4th 1223, 1232 (10th Cir. 2022).  A plausible claim, however, must include facts from which a court may reasonably infer the defendant's liability.  *Id.*  Allegations that are "'merely consistent with' a defendant's liability" stop short of that line.  *Id.* at 1232-33 (quoting *Iqbal*, 556 U.S. at 678, and *Twombly*, 550 U.S. at 557).  Further, labels, conclusions, formulaic recitations of elements, and naked assertions will not suffice.  *Id.* at 1233.

## ARGUMENT

**I.   PLAINTIFFS' CLAIMS ARE BARRED BY THE TWO-YEAR STATUTE OF LIMITATIONS IN C.R.S. § 13-80-102(1)(h).**

This case should be dismissed because the claims for inverse condemnation are barred by the two-year statute of limitations set forth in C.R.S. § 13-80-102(1)(h).  *See Bad Boys of Cripple Creek Mining Co. v. City of Cripple Creek*, 996 P.2d 972, 975 (Colo. App. 2000).  As set forth above, the claims are based on an airport Master Plan issued in 2000 which contained a 60 Ldn Contour that "exceeded the proposed future 60 Ldn Contour provided in the 1988 Master Plan." Complaint, ¶¶ 51-53; Complaint Ex. J, ¶ 42.  Plaintiffs have conceded they knew about the 2000 Master Plan more than two years before this case was filed.  *See, e.g.,* Complaint Ex. H, at p.16 (acknowledging that the 2000 Master Plan "was added to the [Airport] websites in 2020" **at the request of Plaintiffs' HOA**).

A claim for injury to property "accrue[s] on the date both the injury and its cause are known or should have been known by the exercise of reasonable diligence." C.R.S. § 13–80–108(1). Plaintiffs had at least constructive notice of the noise levels reported in the 2000 Master Plan no later than during Calendar Year 2020—which was more than two years before this case was filed.

8

*Cf. City & Cnty. of Denver v. Bd. of Cnty. Comm'rs of Adams Cnty.*, 2024 CO 5, ¶ 6, __ P.3d __, __ (Colo. 2024) ("Because Colorado law dictates that a breach-of-contract claim accrues at the time the breach "is discovered or should have been discovered by the exercise of reasonable diligence," § 13-80-108(6), and because Adams learned no later than 1995 that Denver breached the IGA by using a modeling system rather than a monitoring system, Adams' claim against Denver is barred by the applicable three-year statute of limitations.").

Here, the Plaintiffs claim injury from noise caused by an alleged increase in noise levels at or because of the Airport, which Plaintiffs knew about or should have known about by the exercise of reasonable diligence at least by 2020. Accordingly, the claims for inverse condemnation should be dismissed as barred by the two-year statute of limitations.

## II. THE COMPLAINT FAILS TO ALLEGE THE FACTUAL BASIS FOR THE INVERSE CONDEMNATION CLAIMS.

To succeed on their inverse condemnation claims, Plaintiffs must show, among other things, that there has been a taking or damaging of a property interest. *Am. Fam. Mut. Ins. Co. v. Am. Nat'l Prop. & Cas. Co.*, 2015 COA 135, ¶ 26, 370 P.3d 319, 326 (Colo. App. 2015). The Complaint does not come close to plausibly alleging the first element of a successful inverse condemnation claim.

In *Andrews v. United States*, 108 Fed. Cl. 150, 159 (2012), a property owner sued the United States alleging that flights over and around her property by Navy fighter jets effected inverse condemnation. The court granted the government's motion to dismiss, holding that the owner failed to state a claim for inverse condemnation. Plaintiff alleged that "noise and vibrations from the Super Hornets flying 'directly over and in close proximity to the Property [had] substantially interfered with Plaintiff's use and enjoyment of the Property and [had] diminished

9

the market value of the Property.'" *Id*. at 153.  The court stated that "Treatment under takings law is appropriate—and a plaintiff has stated a claim for an avigation easement—when the facts alleged by plaintiff and accepted as true . . . show flights over private land that are so low and so frequent as to be a direct and immediate interference with the enjoyment and use of the land." *Id*. at 158-59 (citing *U.S. v. Causby*, 328 U.S. 256, 266 (1962) (cleaned up).  "In determining whether plaintiff has met this standard, the court considers, based on the facts alleged by plaintiff: (1) whether the planes flew directly over plaintiff's land; (2) the altitude and frequency of the flights; and (3) whether the flights directly and immediately interfered with plaintiff's enjoyment and use of the land." *Id*. at 159.  "Although detailed factual allegations are not necessary, plaintiff must state a basis for her 'entitlement to relief' that goes beyond 'labels and conclusions'; 'a formulaic recitation of the elements of a cause of action will not do." *Id*. (citing *Twombly*, 550 U.S. at 555).  "The court is free to reject plaintiff's 'legal conclusions couched as factual allegations." *Id*. (cleaned up).

In dismissing the case, the court stated: "Defendant is correct that plaintiff's conclusions provide no basis for investigation."  *Id*. at 159 (cleaned up).  "The language of plaintiff's allegations tracks the elements of the cause of action without providing any factual support for plaintiff's conclusions." *Id*.  Plaintiff "relies on the conclusory assertions that noise and vibrations from the flights substantially interfere with her use and enjoyment of the Property and lower its market value without supporting these conclusions with any facts." *Id*. at 160.

Here, the Complaint relies on conclusory allegations that the noise and vibrations from the flights substantially interfere with Plaintiffs' use and enjoyment of their property and lower its market value without supporting these conclusions with any facts.  Plaintiffs also say nothing about

10

the altitude or frequency of the flights and offers no facts to support the conclusory allegation that the noise and vibrations from aircraft operating at the Airport lower their homes' market values. As in *Andrews*, Plaintiffs here have failed to state a basis for their entitlement to relief that goes beyond labels and conclusions.

Dismissal on this ground is also supported by *Thompson v. City and County of Denver* where the Colorado Court of Appeals held that homeowners sustained no compensable 'damaging' of their property because of personal and annoyance and vibration that was not different in kind from that suffered by other members of the public." 958 P.2d 525, 528. The court emphasized that "To recover in a 'damaging' case, the owner must show a unique or special injury that is different in kind from, or not common to, the general public. The damage must be to the property or its appurtenances, or it must affect some right or interest that the owner enjoys in connection with the property and which is not shared with or enjoyed by the public generally." *Id*. The court added that "In no case has mere depreciation in value been grounds to award compensation for a damaging of property." *Id*. at 528; *see also Claassen v. City & Cnty. of Denver*, 30 P.3d 710 (Colo. App. 2001) (claimed injuries of noise, pollution, and vibration were not different than those suffered by the general public, thus defeating "'damaging' claims").

Even if the Plaintiffs are exposed to greater amounts of noise, pollution, or traffic because of Airport operations (which is not alleged with any specifics in the Complaint), the Complaint fails to provide facts to allege that "such effects were . . . different in kind from the effects suffered by the public in general." *Thompson*, 958 P.2d at 529.

11

### III. PLAINTIFFS' INVERSE CONDEMNATION CLAIMS ARE <u>PREEMPTED BY FEDERAL LAW</u>.

Lastly, the Court should dismiss Plaintiffs' inverse condemnation claims against the County because they are preempted by the federal government's plenary power over aviation.

#### A. *Plaintiffs' Challenges to Noise Levels Emanating from Aircraft Using the Airport Are Preempted by the ANCA*

Plaintiffs' challenges to noise emanating from the Airport or aircraft that use the Airport are preempted by federal law, specifically the ANCA. In *City of Burbank*, the Supreme Court concluded that "the pervasive nature of the scheme of federal regulation of aircraft noise" had completely preempted the states' traditional police power to regulate noise in that area. *See* 411 U.S. at 633. The Court reasoned that "pervasive control vested in [federal agencies] under the 1972 [Noise Control] Act seems to us to leave no room for local curfews or other local controls." *Id*. at 638; *see also id*. at 633 ("It is the pervasive nature of the scheme of federal regulation of aircraft noise that leads us to conclude that there is preemption.").

Here, the pervasive control vested in the FAA with regard to lead in fuel and airport/aircraft noise leaves no room for state law to interfere with the federal regulation of fuel and noise. *See, e.g., Friends of the E. Hampton Airport, Inc., v. Town of E. Hampton*, 841 F.3d 133, 147-55 (2d Cir. 2016) (airport users seeking preliminary injunction barring enforcement of town's local laws, which placed limit on weekly flights and established curfews prohibiting aircraft from using town's airport during nighttime hours, were likely to succeed on their preemption claim); *Pirolo v. City of Clearwater,* 711 F.2d 1006, 1008, 1010 (11th Cir. 1983) (preempting local ordinances "prohibiting night operations" and "prescribing air traffic patterns"); *San Diego Unified Port Dist. v. Gianturco,* 651 F.2d 1306, 1308, 1312 (9th Cir.1981) (preempting "curfew

12

on aircraft flights"); *Price v. Charter Twp. of Fenton,* 909 F. Supp. 498, 505 (E.D. Mich.1995) (preempting ordinance that "limit[ed] the frequency of flights of certain [noisy] airplanes").

        **B.**      **Plaintiffs' Challenges to the Use of Leaded Fuel and the Use of Aircraft Pilot Training Exercises Are Preempted by the AAIA**

Plaintiffs' use of inverse condemnation to challenge the availability of leaded fuel at the Airport for general aviation aircraft is preempted by federal law, specifically the AAIA, because the Airport is required to offer leaded fuel. Because the Airport is obligated by its Grant Assurances to allow aircraft to operate with leaded fuel, *see supra*, p.5-6, it is not proper for Plaintiffs to seek compensation from the County merely for compliance with the Grant Assurances.

Plaintiffs' use of inverse condemnation law to challenge the use of the Airport for pilot training exercises is preempted by the AAIA because the Airport is required to allow pilot training schools to use its facilities. The FAA has made it clear that airports must not ban aeronautical uses, even to avoid financial liability. As the FAA stated in *Jeff Bodin and Garlic City Skydiving v. Cnty. of Santa Clara*:

> The Director does not agree that the County may use the potential of increased liability exposure under state law as a means to justify excluding an aeronautical user from a federally-obligated airport. Under the County's thinking, any aeronautical activity that involved greater risk or liability than another could be legitimately banned. **Under this approach, one could argue that other aeronautical activities, such as student flight training, or touch and go landings, expose the Respondent to greater liability than "normal" flight operations conducted by pilots with greater flight experience. This approach is not consistent with Respondent's obligations under Grant Assurance 22**.

No. 16-11-06, 2011 WL 13220354, at *28 (F.A.A. Dec. 19, 2011) (emphasis added), *rev'd in part on other grounds*, 2013 WL12244245 (F.A.A. Aug. 12, 2013); *see also id.* ("Grant Assurance

13

22(a) . . . does not permit the sponsor to pick and [choose] among the aeronautical activities it believes present the least amount of liability.").

## CONCLUSION

The Complaint and action should be dismissed with prejudice.

Respectfully submitted this 10th day of April, 2024.

／s/ M. Roy Goldberg
M. Roy Goldberg
STINSON LLP
1775 Pennsylvania Avenue N.W., Suite 800
Washington, D.C. 20006
Telephone: (202) 728-3005
Email: roy.goldberg@stinson.com

Nathaniel T. Vasquez
**STINSON LLP**
1144 Fifteenth Street, Suite 2400
Denver, CO 80202
Telephone: (303) 376-8424
Email: nathaniel.vasquez@stinson.com

*Attorneys for Defendant Board of County Commissioners of the County of Jefferson, Colorado*

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing pleading complies with the applicable type-volume limitation set forth in Judge Domenico's Practice Standard (III)(A)(1) and contains 3,968 words.

／s/ M. Roy Goldberg
M. Roy Goldberg

14

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on April 10, 2024, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system.  Any other counsel of record will be served in accordance with the Federal Rules of Civil Procedure.

                                            */s/ M. Roy Goldberg*
                                            M. Roy Goldberg