## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:24-cv-00951-CNS

Andrea Lockhart, et al.

    Plaintiffs,

v.

THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF JEFFERSON, COLORADO, as successor in interest to the Jefferson County Airport Authority,

    Defendant.

---

## PLAINTIFFS' MOTION TO REMAND

---

Through undersigned counsel, Plaintiffs respectfully request that the Court remand this action to the District Court for Boulder County, Colorado. In support of this Motion to Remand ("Motion"), Plaintiffs state as follows:

## CERTIFICATE OF CONFERRAL

Pursuant to D.C.COLO.LCivR 7.1, undersigned counsel certifies that he conferred with counsel for Defendant ("County"); the County opposes this Motion.

## INTRODUCTION

Federal question jurisdiction exists in two ways: (1) original jurisdiction, where a federal question is presented in a well-pleaded complaint; and (2) complete preemption, where Congress intends to displace all state law on a given issue. Through their Complaint (ECF No. 4) ("Complaint"), Plaintiffs seek only the payment of just compensation under Colorado's law for the taking and damaging of their property rights. (Complaint at 4). The County has the burden to show these state inverse condemnation claims are removable for federal question jurisdiction. The County does not—and cannot—meet this burden because there is no legal authority supporting removal here.

Instead, the County merely alleges without demonstrating that Plaintiffs' state inverse claims, "(1) arise under federal law" and "(2) also are completely preempted" by federal aviation statutes. (ECF No. 1 at 1-2) ("Notice"). Because the County cannot show that state inverse condemnation claims raise a federal question or are completely preempted, the County resorts to mischaracterizing the Complaint and the scope of inverse condemnation remedies in an effort to justify removal. For example, the County says that "a state court may not apply state inverse condemnation law to prohibit or

2

significantly restrict airport operations," (Notice at 12), and that Plaintiffs are using "state inverse condemnation law to force RMMA to either shut down or significantly reduce operations." (Notice at 15). But this is not what Plaintiffs' Complaint seeks, and this is not how inverse condemnation law works.

In Colorado, a cause of action for inverse condemnation arises when an entity with eminent domain authority substantially deprives a property owner of the use and enjoyment of their property without initiating formal condemnation proceedings. *See Sos v. Roaring Fork Transportation Auth.*, 487 P.3d 688, 696 (Colo. App. 2017). Plaintiffs do not—and cannot—seek to enjoin, limit, or control the County's airport or its airport operations through inverse condemnation claims. *See Ambrosio v. Baker Metro. Water & Sanitation Dist.*, 340 P.2d 872, 873 (Colo. 1959). Instead, inverse condemnation actions are special statutory proceedings that only concern issues relating to the just compensation owed for governmental use of private property. *See Ossman v. Mountain States Tel. & Tel. Co.*, 520 P.2d 738, 742 (Colo. 1974). Just compensation is the only remedy in inverse condemnation cases. *See Union Exploration Co. v. Moffat Tunnel Imp. Dist.*, 89 P.2d 257, 262 (Colo. 1939). There is no federal question here.

The County repeatedly blurs lines of legal authority throughout its Notice, invoking cases involving complete preemption for original jurisdiction arguments, (Notice at 12-16) and vice versa, (Notice at 21-22). But federal question jurisdiction cannot be patchworked together through a "*some from column A, some from column B*" approach, and the County does not show any authority demonstrating that state inverse condemnation claims arise under federal law or are completely preempted by it.

The County also fails to recognize that numerous federal courts have held that federal aviation statutes *do not* completely preempt state law claims. The County also ignores dozens of state court decisions that have allowed inverse condemnation actions against municipal airport proprietors. Instead of addressing this dispositive authority, the County relies on inapt analogies to railroad easements; ERISA; discrimination against disabled persons; municipal ordinances seeking control of the airspace or airport operations; and legal claims seeking to enjoin, control, or regulate airports.

There is a strong presumption against removal, and the County bears the burden of showing that federal jurisdiction exists. The County has not met this burden; this case must therefore be remanded to Colorado state court for want of jurisdiction.

## **STANDARD FOR REMOVAL**

Federal district courts have limited jurisdiction, so removal statutes are strictly construed against removal. See *Fajen v. Found. Reserve Ins. Co., Inc.*, 683 F.2d 331, 333 (10th Cir. 1982). The party seeking removal bears the burden of establishing that federal jurisdiction exists, see *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002), and there is a strong presumption against removal. See *Merida Delgado v. Gonzales*, 428 F.3d 916, 919 (10th Cir. 2005).

Courts generally begin with the well-pleaded complaint rule where federal question jurisdiction exists only if "a federal question is presented on the face of the properly pleaded complaint." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 386 (1987). This doctrine recognizes that "the plaintiff is the 'master of the claim' and may 'avoid federal jurisdiction by exclusive reliance on state law.'" *Bd. of County Commissioners of*

4

*Boulder County v. Suncor Energy (U.S.A.) Inc.*, 25 F.4th 1248, 1255 (10th Cir. 2022). Moreover, the mere fact that federal statutes or regulatory schemes may provide a defense to a claim does not warrant removal. *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 14 (1983).

However, the Supreme Court has recognized an exception known as the "complete preemption doctrine." *Felix v. Lucent Techs., Inc.*, 387 F.3d 1146, 1154 (10th Cir. 2004). "Although the defense of preemption does not provide jurisdiction, federal jurisdiction is present when claims are asserted in an area of law that Congress 'so completely pre-empt[ed]' that the claim 'is necessarily federal in character.'" *Bearse v. Port of Seattle*, No. C09-0957RSL, 2009 WL 3066675, at *2 (W.D. Wash. Sept. 22, 2009) (quoting *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987)). This doctrine applies when "the pre-emptive force of a statute is so extraordinary that it converts an ordinary state common-law complaint into one stating a federal claim," *Caterpillar, Inc.*, 482 U.S. at 393, and when "Congress intended to allow removal…as manifested by the provision of a federal cause of action." *Suncor*, 25 F.4th at 1256.

The complete preemption exception is "quite rare," *Dutcher v. Matheson*, 733 F.3d 980, 985 (10th Cir. 2013), and represents an "extraordinary pre-emptive power." *Metro. Life Ins. Co.*, 481 U.S. at 65. In fact, "the circumstances are so rare…that the Supreme Court has recognized complete preemption in only three areas: § 301 of the Labor Management Relations Act of 1947 ('LMRA'), § 502 of the Employee Retirement Income Security Act of 1974 ('ERISA'), and actions for usury against national banks under the National Bank Act." *Devon Energy Production Co., L.P. v. Mosaic Potash*

5

*Carlsbad, Inc.*, 693 F.3d 1195, 1204-05 (10th Cir. 2012). "Further, for the complete-preemption doctrine to apply, the challenged claims must fall within the scope of federal statutes intended by Congress completely to displace all state law on the given issue and comprehensively to regulate the area." *Devon*, 693 F.3d at 1205. A court faced with "competing preemption narratives," has the "duty to accept the reading that disfavors pre-emption." *Cook v. Rockwell Intern. Corp.*, 790 F.3d 1088, 1094 (10th Cir. 2015).

Without "clear congressional intent" to create removal, a court should remand. *Schmeling v. NORDAM*, 97 F.3d 1336, 1342 (10th Cir. 1996). Where a court has any hesitation, "all doubts are to be resolved against removal." *Fajen*, 683 F.2d at 333.

## ARGUMENT

### A. Plaintiffs Have Not Asserted a Cause of Action that Provides this Court with Original Jurisdiction

The viability of the County's original jurisdiction argument rests entirely on Plaintiffs' well-pleaded Complaint. A plain reading demonstrates that Plaintiffs are only pursuing inverse condemnation claims for just compensation under Colorado law. (Complaint at ¶¶ 1-19, 95-110, 111-123, 124-143). Plaintiffs' just compensation claims arise from the fact that avigation easements ("Easements") previously benefitting the County were terminated. (Complaint at ¶¶ 38-58). The Easements had limits to protect Plaintiffs' properties, which the County agreed to abide by; and if these limits were exceeded, the Easements could be terminated—with those property rights returning to the Plaintiffs. (Complaint at ¶¶ 38-46). This is precisely what happened when the Boulder County District Court terminated the Easements in an Order entered on March 24, 2022. (Complaint at ¶ 55, Exhibit I). But since losing those property rights, the

6

County has continued to burden Plaintiffs' properties. (Complaint at ¶¶ 59-94). In fact, the County *increased* its Airport operations over Plaintiffs' properties since then, flying directly within Plaintiffs' private airspace. (Complaint at ¶¶ 59-65, 97-100). These actions are compensable under Colorado law. (Complaint at ¶¶ 95-143).

    1. <u>The Complaint Does Not "Arise Under" Federal Law</u>

The County relies on *City of Tipp City v. City of Dayton*, 204 F.R.D. 388 (S.D. Ohio 2001) to support alleged original jurisdiction through an "arises under federal law" argument. (Notice at 13-14). In *Tipp City*, municipalities filed a nuisance claim against a neighboring city, as an airport operator, for "failure to implement FAA tower orders regarding noise abatement…." *Id.* at 394. While subject matter jurisdiction may exist over claims that "require resolution of a substantial question of federal law," this "arises under" standard is also "determined by reference to the well-pleaded complaint." *Id.* In *Tipp City*, the court found that the complaint *did* "raise a substantial question of federal law" since the tower orders had the "force of an FAA regulation" that implicated the "federal government's extensive control over aircraft *noise regulation*." *Id.* at 395-96 (emphasis added). Unlike *Tipp City*, though, Plaintiffs' Complaint is based only on Colorado law. (Complaint at ¶¶ 106, 119, 127, 139). Plaintiffs cannot regulate or control the Airport. *See supra* p. 3. *Tipp City* is therefore inapposite.

The County further argues that the Complaint "requires resolution of a substantial question of law" that creates federal jurisdiction, relying upon *Illig v. Union Elec. Co.*, 334 F. Supp. 2d 1151, 1154 (E.D. Mo. 2004). (Notice at 21-22). But *Illig* is inapposite too. *Illig* explicitly "arose under federal law" because it "necessarily turned on some

7

construction of federal law." *Id.* at 1154; (Notice at 21). The *Illig* court found federal question jurisdiction because "plaintiffs state *on the face of their complaint* that they believe that UE's claim to use their property was derived from the [federal] Trails Act.…" *Illig*, 334 F. Supp. 2d at 1154 (emphasis added). By contrast, Plaintiffs' Complaint pursues *only* just compensation claims arising *only* under Colorado law.

2. <u>FAA Grant Assurances and Administrative Decisions are Inapposite</u>

The County's Grant Assurance arguments do not establish federal question jurisdiction either. (Notice at 12). Again, Plaintiffs' claims do not seek to modify or control Airport operations, *supra* p. 3, and the County's ability to comply with its Grant Assurance requirements is not an element of Plaintiffs' claims. *See Fajen v. Found. Reserve Ins. Co., Inc.*, 683 F.2d 331, 333 (10th Cir. 1982). The County also fails to identify a single Grant Assurance that would be violated if the County had to pay just compensation. And even if such a Grant Assurance existed, "artfully contrived reservations and agreements between the Federal government and the county cannot contract away the county's responsibilities" as "owner of the airport," which "owes a duty to the surrounding landowners." *Standen v. Alpena County*, 177 N.W.2d 657, 662 (Mich. App. 1970). In fact, acquiring easements adjacent to an airport is common to aviation-related land-use planning. *See, e.g.*, Federal Grant Assurance 21.

The County's reliance on FAA administrative decisions is likewise inapt. (Notice at 15-18). First, administrative orders have no bearing here since the FAA cannot define the boundaries of federal jurisdiction. The County nevertheless cites *AOPA v. City of Pompano Beach, Fla.*, No. 16-04-01, 2005 WL 3722717, at *1 (F.A.A. Dec. 15, 2005)

8

for its Grant Assurance arguments. *AOPA* involved "the City's adoption of *ordinances* prohibiting and restricting certain aeronautical operations at the Air Park, including…touch-and-go operations…." *AOPA* at *1 (emphasis added). But there are no ordinances at issue here, and Plaintiffs' claims cannot *prohibit* any Airport operations. *Supra* p. 3. *AOPA* and the other FAA decisions are inapposite.

Because Plaintiffs only seek relief via state inverse condemnation claims, the Complaint does not confer federal question jurisdiction. *See Bank of New York v. Lomax-Smith*, No. CIVA06CV02459ZLWMEH, 2007 WL 121829, *1 (D. Colo. Jan. 10, 2007) (remanding where plaintiff's complaint alleged only state law claims).

B. **Federal Law Does Not Completely Preempt Plaintiffs' Inverse Condemnation Claims**

The County also alleges that the complete preemption exception applies because "a state court may not apply state inverse condemnation law to prohibit or significantly restrict airport operations in a manner that violates the airport sponsor's legal requirements under the AAIA and ANCA." (Notice at 12). But inverse condemnation claims do not work this way—they seek only just compensation for the taking or damaging of property rights that should have been (but were not) acquired by an entity possessing condemnation power. *Supra* at 3. Plaintiffs' inverse condemnation claims therefore explicitly recognize that the County's Airport operations will continue without any restrictions or controls.

9

1. <u>Federal Courts Have Held that Federal Aviation Law Does Not Completely Preempt State Law Claims</u>

The County has the burden to show complete preemption justifying removal. It has failed to meet this burden. In fact, many federal courts have expressly found that federal aviation law does not completely preempt state law claims. *See, e.g.*, *Schmeling v. NORDAM*, 97 F.3d 1336, 1344-45 (10th Cir. 1996) (remanding to state court and holding that "Congress has neither expressly nor impliedly provided Schmeling with a federal cause of action to enforce the FAA drug-testing laws" and the case was therefore "not subject to removal under the complete preemption doctrine"); *Wayne v. DHL Worldwide Express*, 294 F.3d 1179, 1184 (9th Cir. 2002) (concluding that "Congress did not intend to completely preempt state law" through the [Airport Deregulation Act ("ADA")] ; *Bearse v. Port of Seattle*, No. C09-0957RSL, 2009 WL 3066675, at *3-5 (W.D. Wash. Sept. 22, 2009) (remanding inverse condemnation claim against airport operator to state court since defendant had "not cited any cases in which federal jurisdiction was found for removal purposes based on the FAA, NCA, or ADA"); *Voorhees v. Naper Aero Club, Inc.*, 272 F.3d 398, 404 (7th Cir. 2001) (remanding to state court "for want of jurisdiction" and holding that FAA's lack of a civil enforcement provision was "fatal to a claim of complete preemption"); *Denzik v. Reg'l Airport Auth. of Louisville & Jefferson Cnty.*, 361 F. Supp. 2d 659, 664 (W.D. Ky. 2005) (remanding to state court for lack of subject matter jurisdiction after finding that "the ADA is simply not one of those *extraordinary* circumstances where Congress intends, not merely to preempt a certain amount of state law, but also to transfer jurisdiction to decide the preemption question from state to federal courts"); *Kingsley v. Lania*, 221 F.Supp.2d 93,

98-99 (D. Mass. 2002) (remanding claims against air carrier and finding that the ADA did not create complete preemption).

The County has failed to cite a single case holding that the federal statutes it cites, ANCA and AAIA—or any federal regulations promulgated thereunder—completely preempt state law inverse condemnation claims. Nor has it explained how the payment of just compensation would violate any federal statute, regulation, or grant assurance. The County also fails to recognize that ANCA and AAIA do not provide for a private right of action. *Compare Horta, LLC v. City of San Jose*, No. C 02-04086 JF, 2008 WL 4067441, at *4 (N.D. Cal. Aug. 28, 2008) (holding that "Congress did not intend to create a private right of action for ANCA violations"), *and L-3 Commc'ns Integrated Sys., L.P. v. City of Greenville, Tex.*, No. 3:11-CV-2294-P, 2012 WL 3941766, at *2 (N.D. Tex. Sept. 5, 2012) ("The AAIA regulations do not provide for a private right of action and therefore cannot serve as an independent basis for jurisdiction."), *with Schmeling v. NORDAM*, 97 F.3d 1336, 1344-45 (10th Cir. 1996) (finding no private right of action for FAA regulations and no complete preemption). Without a federal private right of action, there is no removal jurisdiction based on these statutes. *See Meinders v. Refco Sec., Inc.*, 865 F. Supp. 721, 723 (D. Colo. 1994).[1]

Furthermore, ANCA relates to "the enactment of local noise and access restrictions by any public airport operator" and provides that "local laws not enacted in

---

[1] In fact, one of the cases the County relies upon makes this very point. *Tipp City* found no complete preemption in part because the "Federal Aviation Act, as amended by the ADA [Airline Deregulation Act], does not provide a private right of action" and therefore "a state law claim could not be converted into a federal claim under that statute." *City of Tipp City v. City of Dayton*, 204 F.R.D. 388, 394 (S.D. Ohio 2001).

compliance with [ANCA]…are federally preempted." *Friends of the E. Hampton Airport, Inc. v. Town of E. Hampton*, 841 F.3d 133, 152 (2d Cir. 2016). Plaintiffs' inverse condemnation claims are not about any local laws or restrictions—they are only just compensation claims to account for a deprivation of Plaintiffs' property rights.

ANCA also does not apply to the vast majority of aircraft overflights at issue in this litigation. By its own terms, ANCA applies to "stage 2 and stage 3 aircraft." 49 U.S.C. § 47521(8). "Stage" classifications apply only to transport category large airplanes, jet airplanes, and helicopters. 14 C.F.R. § 36.1(f)(1-14); (h)(1-7). These classifications are not used to describe piston engine or turbo prop airplanes, which cause most of the overflight takings and damages alleged in the Complaint.

Taken together, there is considerable precedent holding that federal aviation statutes do not completely preempt state law claims. As such, the complete preemption exception does not confer federal question jurisdiction on this Court.

2. <u>Significant Precedent Supports State Inverse Condemnation Claims Against Municipal Airport Proprietors</u>

Even if the County were to raise a hypothetical preemption defense, such a defense would still be insufficient to support removal. *See Karnes v. Boeing Co.*, 335 F.3d 1189, 1193 (10th Cir. 2003); *see also Tipp City*, 204 F.R.D. at 394 (holding that since "complete preemption is inapplicable" the argument that plaintiff's "nuisance claim is preempted by the ADA" is "merely a defensive argument, which confers neither federal subject matter jurisdiction nor a basis for removal to this Court"). But the County hasn't even raised a viable preemption defense here—there is no such defense. The County fails to address significant precedent recognizing this too.

Courts have recognized that inverse condemnation claims remain as a remedy for affected property owners even in cases where other claims have been dismissed because of preemption. *See, e.g.*, *Bryski v. City of Chicago*, 499 N.E.2d 162, 163-167 (Ill. App. 1986) (citing to law precluding claims attempting to restrict airport operations but recognizing "the proper remedy for damages caused by the operation of a nearby airport is an action for inverse condemnation"). Applying this standard, the *Bryski* court upheld the dismissal of nuisance and trespass claims seeking to discontinue airport uses while recognizing that the inverse condemnation claim could continue. *Bryski*, 499 N.E. 2d at 167-68 ("[P]laintiffs may still pursue a claim of inverse condemnation and are not denied a remedy for any damage to their property.").

The County attempts to collapse this established distinction by arguing without support that "the practical impact of Plaintiffs' allegations—as well as their demand from the County—would be to shut down the Airport or significantly reduce its operations." (Notice at 5). And throughout its Notice, the County attempts to rewrite Plaintiffs' well-pleaded Complaint seeking only inverse condemnation claims to transform them into the categories of claims that have been preempted—those that enjoin, regulate, or control airports. (Notice at 15-16). These cases are inapposite.

Instead, these cases merely show that claims enjoining, regulating, or controlling airports can be barred in some circumstances. From these cases, the County jumps ahead to an assumed conclusion: "Plaintiffs' claims for inverse condemnation are preempted by the AAIA and ANCA…." (Notice at 15). But the County fails to connect these dots. The County doesn't cite even *one* authority holding that inverse

13

condemnation claims—which are for just compensation only—have the same effect as "local laws" that have "established curfews" or "local ordinances . . . prescribing air traffic patterns." (Notice at 15-16). Those County-cited cases relate to entirely different legal claims that have no application here.

For example, the County cites *Friends of the E. Hampton Airport, Inc. v. Town of E. Hampton*, 841 F.3d 133, 147-54 (2d Cir. 2016) in an attempt to argue for preemption. (Notice at 15-16). But that case is inapposite because it involved a suit by "airport users and aviation companies" to "enjoin enforcement" of the "Local Laws" passed by the Town to establish curfews and limitations on flight activity. *Id.* at 137-41. The court found that these airport users and aviation companies, who were "threatened with escalating fines and other sanctions under the Local Laws," had properly raised a claim for injunction that "falls squarely within federal equity jurisdiction" since "the Supreme Court has consistently recognized federal jurisdiction over declaratory- and injunctive-relief actions to prohibit the enforcement of state or municipal orders alleged to violate federal law"). *Id.* at 144-45. There are no state or local laws at issue here that would control or regulate the County's airport, so this case is unavailing.

The County also fails to recognize a significant number of state-court decisions allowing inverse condemnation claims to proceed against local airport proprietors. *See, e.g.*, *State v. Doyle*, 735 P.2d 733, 735-38 (Alaska 1987) (affirming state trial court judgment for inverse condemnation against municipal airport proprietor for just compensation owed for an avigation easement); *Culley v. Elko County*, 711 P.2d 864, 866-67 (Nev. 1985) (reversing dismissal of inverse condemnation action against

14

municipal airport proprietor); *Jackson v. Metropolitan Knoxville Airport Authority*, 922 S.W.2d 860, 865 (Tenn. 1996) (reversing dismissal of inverse condemnation action against airport authority); *Brenner v. New Richmond Regional Airport Com'n*, 816 N.W.2d 291, 294 (Wis. 2012) (reversing dismissal of inverse condemnation action against municipal airport proprietor); *Baker v. Burbank-Glendale-Pasadena Airport Auth.*, 705 P.2d 866, 868-69 (Cal. App. Sept. 23, 1985) (reversing dismissal of inverse condemnation action against municipal airport proprietor even where airport authority lacked eminent domain power); *Foster v. City of Gainesville*, 579 So.2d 774, 778 (Fla. Dist. Ct. App. 1991) (reversing dismissal of inverse condemnation action against municipal airport proprietor); *Jackiewicz v. Village of Bolingbrook*, 148 N.E.3d 152, 161 (Ill. App. 2020) (vacating summary judgment ruling in favor of municipal airport proprietor in inverse condemnation action); *City of Atlanta v. Starke*, 384 S.E.2d 419, 423 (Ga. App. 1989) (affirming just compensation award pursuant to state inverse condemnation claim against municipal airport proprietor); *In re Flowers*, 734 A.2d 69, 73 (Pa. Commw. Ct. 1999) (affirming judgment for inverse condemnation against municipal airport operator). The ANCA, AAIA, FAA, and ADA pre-existed all of the above decisions, but none of the cases were removed to federal court or preempted by the federal statutes. The County fails to address this large body of law or cite to *any* authority holding that federal aviation statutes preempt state inverse condemnation claims against municipal airport proprietors or otherwise warrant removal.

For all of the foregoing reasons, the County has failed to meet its burden showing that removal was proper. This Court should therefore find that it has no subject

matter jurisdiction because there is (1) no original jurisdiction, and (2) no complete preemption.

### C. Plaintiffs Should Be Awarded Their Attorney Fees and Costs Pursuant to 28 U.S.C. § 1447(c)

The County cites no authority in its Notice showing that state inverse condemnation claims are removable. Without any such authority, the County can only resort to mischaracterizing the plain language of Plaintiffs' well-pleaded Complaint and the nature of inverse condemnation remedies in an attempt to force Plaintiffs' claims into inapplicable case law. This is objectively unreasonable. Plaintiffs should therefore be awarded their attorney fees and costs incurred as a result of removal pursuant to 28 U.S.C. § 1447(c). *See Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005) (identifying the standard for awarding fees and costs "only where the removing party lacked an objectively reasonable basis seeking removal").

## CONCLUSION

Plaintiffs' Complaint raises only inverse condemnation claims under Colorado law. These state inverse condemnation claims: (1) do not present a federal question; and (2) are not completely preempted by federal law. The County does not—and cannot—meet its burden to show removal is proper. This Court therefore lacks subject matter jurisdiction. Accordingly, this Court should remand this action to the Boulder County District Court for want of jurisdiction and award Plaintiffs their attorney fees and costs pursuant to 28 U.S.C. § 1447(c).

Respectfully submitted this 24th day of April 2024.

*s/ John R. Sperber*
John R. Sperber
Sean J. Metherell
Faegre Drinker Biddle & Reath LLP
1144 Fifteenth Street, Suite 3400
Denver, CO 80202
Telephone Number: (303) 607-3500
Fax Number: (303) 607-3600
jack.sperber@faegredrinker.com
sean.metherell@faegredrinker.com

Michael J. Hirak
Faegre Drinker Biddle & Reath LLP
2200 Wells Fargo Center, 90 S. 7th Street
Minneapolis, MN 55402
Telephone Number: (612) 766-7000
Fax Number: (612) 766-1600
michael.hirak@faegredrinker.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of April 2024, a true and correct copy of the foregoing **MOTION TO REMAND** was e-filed with the Court through the CM/ECF system which will send notification of such filing to the CM/ECF participants registered to receive service in this case.

*s/ Lynne McWhirt*
Lynne McWhirt, Legal Administrative Assistant