IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:24-cv-00951

ANDREA LOCKHART, et al.

    Plaintiffs,

v.

THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF JEFFERSON, COLORADO, as successor in interest to the Jefferson County Airport Authority,

    Defendant.

**PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION TO DISMISS**

Through undersigned counsel, Plaintiffs respectfully submit this Response to Defendant Board of County Commissioners of the County of Jefferson's ("County") Motion to Dismiss, (ECF No. 14) ("MTD").

## **INTRODUCTION**

The County mischaracterizes Plaintiffs' Complaint (ECF No. 1-1) ("Complaint") in a failed attempt to justify dismissal under Rule 12(b)(6).

The County's statute of limitations argument incorrectly asserts that Plaintiffs' claims are predicated upon an airport master plan published many years ago. Instead, Plaintiffs' claims are based upon the County's use of Plaintiffs' properties after avigation easements the County previously owned (Complaint, Exhibits B-G) ("Easements") were terminated by the Boulder County District Court on March 24, 2022 due to the County's violation of the Easements' terms. (Complaint, Exhibit I). Until that date, the County was operating under a legal claim of right pursuant to the Easements. Plaintiffs now seek just compensation for the taking and damaging of their properties caused by the County's continued and increasing Airport operations since the termination of those Easements. Thus, the earliest possible statute of limitations defense date is March 24, 2024—the Complaint was timely filed before this date.

The County's argument that the Complaint fails to state a claim for relief also fails because the Complaint contains extensive factual allegations establishing a plausible claim for inverse condemnation under Colorado law, and the County has failed to identify any missing legal elements from the claims. The alleged lack of "proof" regarding some factual allegations is an issue for discovery and trial; Plaintiffs are of course not required

to produce all evidence supporting their claim in the Complaint.

Finally, the County's preemption argument fails for the same reasons its Notice of Removal is improper: inverse condemnation law awards only just compensation and not injunctive or regulatory relief. Plaintiffs' inverse condemnation claims under Colorado law therefore do not implicate any federal scheme.

The Motion to Dismiss should be denied.

## **LEGAL STANDARD**

When considering a motion to dismiss, courts must "assume the truth of the plaintiff's well-pleaded factual allegations and view them in the light most favorable to the plaintiff." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). To survive dismissal, Plaintiffs need only state a claim that is "plausible on its face." *Id.* (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). If Plaintiffs have a "reasonable likelihood of mustering factual support" for their claims, Plaintiffs' claims are plausible, and the Court must deny dismissal. *Schneider*, 493 F.3d at 1177.

Motions to dismiss are "'viewed with disfavor and [are] rarely granted.'" *Lone Star Industries, Inc. v. Horman Family Trust*, 960 F.2d 917, 920 (10th Cir. 1992) (citation omitted). Courts are especially reluctant to dismiss inverse condemnation claims. *See, e.g.*, *In Re Upstream Addicks & Barker (Tex.) Flood-Control Reservoirs*, 138 Fed. Cl. 658, 664 (Fed. Cl. 2018) ("[D]ue to the fact-intensive nature of takings cases, trial courts tend to be slow to dismiss them….").

## STATEMENT OF FACTS

Between 1991 and 1996, the County obtained Easements authorizing it to utilize Plaintiffs' airspace above their homes. (Complaint at ¶¶ 38-41). The Easements limited, for example, the types of flights and the amount of noise and vibrations the County could impose—serving as a check on the County creating greater burdens on the properties than the County bargained for in the Easements. (Complaint, Exhibit H at 6; Complaint at ¶¶ 42-45). The Easements remained in place until March 24, 2022, when the Boulder County District Court vacated them, thereby simultaneously returning those property rights back to the Plaintiffs. (Complaint, Exhibit I at 2-3; Complaint at ¶¶ 47-58). After losing the Easements, the County was left with three options: (1) secure new avigation easements by agreement or through eminent domain; (2) change its Airport operations in recognition of its lost Easement rights; or (3) continue burdening Plaintiffs' properties without paying just compensation—seemingly hoping to run out the statute of limitations clock. The County chose the third option, compelling Plaintiffs to pursue inverse condemnation before expiration of the earliest possible limitations date, March 24, 2024.

## ARGUMENT

### A. Plaintiffs' Claims Are Not Time Barred

The County's statute of limitations argument stems from a fundamental mischaracterization of Plaintiffs' claims. The County asserts that Plaintiffs' claims are based on the 2000 Master Plan and that the statute of limitations commenced upon its publication. (MTD at 8-9) ("Plaintiffs had at least constructive notice of the noise levels

4

reported in the 2000 Master Plan.").[1] This is incorrect.

"[T]he statute of limitations is an affirmative defense" and is only "appropriately resolved on a Fed.R.Civ.P. 12(b) motion" where the "dates given in the complaint make clear that the right sued upon has been extinguished…." *Rocky Mountain Christian Church v. Bd. of Cnty. Comm'rs. of Boulder Cnty., Colo*, 481 F. Supp. 2d 1213, 1226 (D. Colo. 2007). The Complaint shows clearly that Plaintiffs' inverse condemnation claims were ***not*** extinguished at the time Plaintiffs filed the Complaint, because the Easements were valid until March 24, 2022. Dismissal under Rule 12 is therefore not appropriate.

Plaintiffs' claims are based on the County's ongoing activity ***after*** the Easements were terminated. (Complaint at ¶¶ 1-19, ¶¶ 31-143). The Master Plan is only tangentially relevant because it was presented as one piece of evidence in the underlying litigation. (Complaint, Exhibit H at 15-16; Complaint at ¶¶ 50-53). But it was the Boulder County litigation ***result*** that triggered Plaintiffs' lawsuit, since up until then the County had a legal right to use Plaintiffs' properties.

A cause of action accrues "on the date both the injury and its cause are known or

---

[1] The County took the opposite position in the underlying litigation, arguing that the Easements should not be vacated because the Master Plan does not show *actual* noise levels. (County's Trial Brief at 7, attached as Exhibit 1) ("[T]he purpose of the noise contours in the Master Plan is to help establish appropriate uses around the airport, not to accurately present actual conditions."); (County's Proposed Findings at 29-30, attached as Exhibit 2). The County argued that the Easements remained valid all the way through appeal, which was not resolved until August 21, 2023. (COA Mandate, attached as Exhibit 3). The County also successfully maintained its other eighteen avigation easements across other Rock Creek properties as a result of its positions. (Complaint, Exhibit I at 2-3). The County is bound by these prior positions and cannot argue a contrary position now that the Easements are gone. *See Johnson v. Lindon City Corp.*, 405 F.3d 1065, 1069 (10th Cir. 2005) (judicial estoppel).

5

should have been known by the exercise of reasonable diligence." C.R.S. § 13-80-108(1). For inverse condemnation, the statute of limitations "begins to run when the taking occurs." *State, Dep't of Health v. The Mill*, 809 P.2d 434, 439 (Colo. 1991). Where a governmental entity once held a valid easement—but continues to use the property after the easement terminated—the "date of taking" is the date the easement ceased to exist.

In *Hayden v. Bd. of Cnty. Comm'rs of Jefferson Cnty.*, the plaintiffs granted Jefferson County a temporary easement with a pre-determined expiration date for a road project. 580 P.2d 830, 832 (Colo. App. 1978). After the easement expired, Jefferson County continued to use the property as if the easement still existed. Plaintiffs then filed an inverse condemnation action in April 1974. *Id.* Jefferson County argued under a six-year statute of limitations that the period commenced when it began constructing the road in February 1968. *Id.* at 834. The court disagreed: "Although the state entered upon plaintiffs' property in February 1968, they did so **under a claim of right**, i.e., the temporary easement.... Consequently, the earliest date upon which this action could have been maintained was January 17, 1969, **when the easement expired**, and the intent to appropriate this property became clear." *Id.* (emphasis added).

Applying *Hayden*, the Tenth Circuit also expressly recognized that the limitations period in Colorado begins to run after an easement expires and when the government continues using the property without a legal right. *McIntyre v. Bd. of Cnty. Comm'rs of Cnty. of Gunnison, Colorado*, 252 Fed. Appx. 240, 245–46 (10th Cir. 2007) ("In *Hayden*, after the temporary easement expired and the defendant did not leave the property, the claim became hostile, and the statute of limitations began running.").

6

Here, the County had a right to use Plaintiffs' airspace until March 24, 2022. But after the Easements were terminated, those property rights expressly reverted to each affected homeowner.[2] (Complaint, Exhibits B-G at 2) (Upon "the occurrence of any of the contingencies set forth in Paragraph 2, then such easement shall revert back to Grantor, its successors, and assigns…."). After the Easements terminated and reverted to the Plaintiffs, the County's continued use of Plaintiffs' properties without the payment of just compensation therefore "became hostile, and the statute of limitations began running" from that date, at the earliest. *McIntyre*, 252 Fed. Appx. at 245-46.

Although factually distinct from *Hayden* because there was no prior granted easement and thus no holdover use, *see id.* at 246, *McIntyre* is also instructive. *McIntyre* applied the same legal principle looking to the date of the government's hostile claim as the commencement date for the limitations period; finding under the facts of that case that the government's hostile claim began when it filed a quiet title action against the McIntyres, claiming public ownership of a trail crossing their property. *Id.* at 245–46 ("The County's use of the property was hostile and disputed starting in June 1998 when it filed its quiet-title action. *Hayden* is consistent with *Doyle* in holding that a takings claim accrues when a plaintiff knows of the hostile claim by the governmental entity."). The court therefore concluded that, although the McIntyres' "state-court inverse-condemnation

---

[2] *See, e.g., Illig v. Union Elec. Co.*, 652 F.3d 971, 978 (8th Cir. 2011) (upon termination of easement, rights in land "would either be transferred to Trailnet or would revert to Illig"); *McAbee Const. Inc. v. U.S.*, 97 F.3d 1431, 1433 (Fed. Cir. 1996) (upon expiration of easement, rights in the land reverted to landowners); *Akers v. C.I.R.*, T.C. Memo. 1984-490 (1984), *aff'd*, 799 F.2d 243 (6th Cir. 1986) (when easement expires, "the property will revert unencumbered to petitioners").

7

claim was timely filed," their decision to dismiss that state claim and refile many years later in federal court was "a significant strategic error" because the federal claim was untimely. *Id.* at 247.

Thus, in *Hayden*, the clock started running (at the earliest) when the government **lost** a property interest but continued using the property anyway. In *McIntyre*, the clock started running when the government **asserted** a property interest through a legal claim of right that had not yet been adjudicated. In both cases, it was the government's hostile claim of right that triggered the limitation period.

The Complaint plainly demonstrates that this is a *Hayden* fact pattern: the Easements were terminated, but the County continued using Plaintiffs' properties. Thus, the earliest possible date at which the statute of limitations expired was March 24, 2024. The Complaint was filed on March 21, 2024, so Plaintiffs' claims are not time barred.

**B. Plaintiffs Properly Pled Their Colorado Inverse Condemnation Claims**

1. <u>Plaintiffs' Complaint Contains Detailed Factual Allegations That Plausibly Suggest Entitlement to Relief</u>

The elements of inverse condemnation under Colorado law are: (1) taking or damaging of a property interest; (2) for a public purpose; (3) without just compensation; (4) by a governmental entity that has the power of eminent domain but has refused to exercise that power. *Scott v. Cnty. of Custer*, 178 P.3d 1240, 1244 (Colo. App. 2007). The Complaint identified all of these elements. (Complaint at ¶¶ 1-19, ¶¶ 31-37, ¶¶ 38-46, ¶¶ 95-110, ¶¶ 111-123, ¶¶ 124-143).

The County fails to identify any element that it contends must be alleged but was not. Instead, the County misrepresents what is and is not in Plaintiffs' Complaint—

arguing, for example, that "Plaintiffs...say nothing about the altitude or frequency of the flights." (MTD at 11). In reality, there are several pages of allegations in the Complaint establishing Plaintiffs' inverse condemnation claims. The Complaint also made specific allegations regarding the County's loss of the Easements (Complaint at ¶¶ 47-58); continued and increasing overflights without the Easements (Complaint at ¶¶ 59-61); the types of aircraft that utilize the airport (Complaint at ¶¶ 62-64); the estimated altitude of overflights through Plaintiffs' airspace (Complaint at ¶ 65); the source and location of lead particulates (Complaint at ¶¶ 66-70); the estimated decibel measurement of overflight noise (Complaint at ¶¶ 79-83); and the impacts on properties and property values (Complaint at ¶¶ 84-86; ¶¶ 91-94).

The County seems to argue that Plaintiffs must both plead **and prove** every factual allegation in the Complaint to state a claim. (MTD at 10-11). That, of course, is not the standard. Plaintiffs' well-pleaded allegations can be tested and proven in discovery and at trial. The County's argument fails.

    2. <u>The County's Reliance on *Thompson* is Misplaced</u>

The County also argues that *Thompson v. City & Cnty. of Denver*, 958 P.2d 525 (Colo. App. 1998) warrants dismissal. This argument fails to recognize the critical difference between the claims at issue in *Thompson* and here; it also fails to recognize the breadth of Colorado's inverse condemnation protections.

Art. II, § 15 of the Colorado Constitution creates two distinct claims of relief for inverse condemnation: (1) physical takings; and (2) damages with no physical taking. A **physical taking** occurs where a public entity "requires the landowner to submit to the

9

physical occupation of his land." *Public Service Co. of Colo. v. Van Wyk*, 27 P.3d 377, 387 (Colo. 2001). A taking "can be effected by a legal interference with the physical use, possession, disposition, or enjoyment of the property, or by acts which translate to an exercise of dominion and control by a governmental entity." *Thompson*, 958 P.2d at 527. When there is a physical taking of only part of a property (called a "partial taking"), "just compensation includes compensation for injury to the remainder of the property as well as payment for the portion actually taken," with the measure of ***remainder damages*** typically being the "reduction in the market value of the remaining property that is caused by the taking." *La Plata Elec. Ass'n, Inc. v. Cummins*, 728 P.2d 696, 698 (Colo. 1986).

A ***physical taking*** due to overflights occurs where aircraft going to or coming from an airport owned and operated by the government flies "so low and frequent as to be a direct and immediate interference with the enjoyment and use of the land." *U.S. v. Causby*, 328 U.S. 256, 266 (1946); *Mock v. U.S.*, 164 Ct. Cl. 473, 475 (Ct. Cl. 1964). Landowners own the air rights above their property up to the navigable airspace, and frequent flights below this airspace constitute a physical taking. *See Griggs v. Allegheny Cnty., Pa.*, 369 U.S. 84, 87 (1962); *Claassen v. City & Cnty. of Denver*, 30 P.3d 710, 712-13 (Colo. App. 2000); *Thompson*, 958 P.2d at 527-28. Pollutants—like the leaded fuel particulates invading Plaintiffs' properties here--can also cause ***physical takings***. *See, e.g., City of Walla Walla v. Conkey*, 492 P.2d 589, 589 (Wash. App. 1971).

Conversely, an ***inverse damages*** claim occurs where there has been ***no physical taking.*** A landowner can recover for ***inverse damages*** only by showing "a unique or special injury which is different in kind from, or not common to, the general public." *City

10

*of Northglenn v. Grynberg*, 846 P.2d 175, 179 (Colo. 1993). Importantly, the "general damage/special damage distinction has no validity" in a partial taking case with **remainder damages,** because there "a property owner should be compensated for all damages that are the natural, necessary and reasonable result of the taking." *La Plata*, 728 P.2d at 700.

*Thompson* involved only claims for inverse damages, **not a physical taking**, because the overflights were *only* within the navigable airspace. *Id.* 958 P.2d at 528. The County ignores this critical difference when citing to *Thompson* to argue: "Even if the Plaintiffs are exposed to greater amounts of noise, pollution, or traffic because of Airport operations…the Complaint fails to provide facts to allege that 'such effects were…different in kind from the effects suffered by the public in general.'" (MTD at 11). But *Thompson* itself recognizes that a **physical taking** occurs where flights are "frequent and low…directly over private land, below [the navigable airspace], [and] cause substantial, direct, and immediate interference with the property owner's enjoyment and use of the land." *Id.* at 528. The "unique or special injury" requirement applies only to allegations of *inverse damages*, absent any allegation of physical taking. *Id.*

The same is true of *Claassen*, which the County also misapplies. (MTD at 11); *Claassen v. City and Cnty. of Denver*, 30 P.3d 710, 712-14 (Colo. App. 2000) (distinguishing physical taking from damaging and applying the "unique or special injury" requirement to *only* the inverse damage claim). In these cases, there were no physical takings, and the owners failed to establish their inverse damages were special and unique.

11

Consistent with Colorado law, the Complaint clearly alleges both: (1) physical takings of Plaintiffs' properties entitling them to just compensation for the takings plus remainder damages; and (2) inverse damages for harms not caused by a physical taking. *See, e.g.*, (Complaint at ¶¶ 95-110) (alleging physical taking via avigation easements); (Complaint at ¶¶ 111-123) (alleging physical taking via low flights and lead contamination); (Complaint at ¶¶ 124-143) (alleging damages different in kind from members of the general public). Thus, none of Plaintiffs' claims are barred by *Thompson*. The first two claims for relief allege **direct physical takings**; the third claim for relief alleges **inverse damages** emanating from flights that do not directly invade the properties but that cause special and unique harms that are different in kind from those suffered by the general public.

### 3. *Andrews* is Inapposite

The County compares Plaintiffs' Complaint to the complaint in *Andrews v. United States*, where the court granted defendant's motion to dismiss because "[t]he language of plaintiff's allegations [tracked] the elements of the cause of action without providing any factual support for plaintiff's conclusions." 108 Fed. Cl. 150, 159 (Fed. Cl. 2012); (*Andrews* Complaint, attached as Exhibit 4). But the differences between the two complaints are stark. The only facts alleged in *Andrews*' five-page and 22-paragraph complaint were indeed merely general allegations reciting the bare elements. (*Andrews* Complaint at 4). In contrast, Plaintiffs' Complaint contains 37 pages and 143 separate paragraphs establishing every element for inverse condemnation and the factual predicate for each claim. Thus, *Andrews* has no import here.

Furthermore, *Andrews* involved a claim under the United States Constitution, which affords fewer protections than the Colorado Constitution and has different elements. *Compare* U.S. Const. amend. V. ("Nor shall private property be taken for public use, without just compensation."), *with* Colo. Const. art. II, § 15. ("Private property shall not be taken ***or damaged***, for public or private use, without just compensation.") (emphasis added). And unlike the present case, *Andrews* involved no prior avigation easements; no prior adjudication vacating said easements; no continued holdover use; and no physical taking. For these reasons, *Andrews* is inapposite.

### C. Federal Law Does Not Preempt Plaintiffs' Claims

The County argued in its Notice of Removal that this Court has jurisdiction because federal law completely preempts Plaintiffs' claims. (ECF No. 1) ("Notice"). "Complete preemption" is invoked to transfer jurisdiction from state to federal court.[3]

In its Motion, the County now invokes defensive preemption. (MTD at 2-3, 12-14). "[D]efensive preemption" is used to "defeat a plaintiff's state-law claim on the merits by asserting the supremacy of federal law as an affirmative defense." *Community State Bank v. Strong*, 651 F.3d 1241, 1260 n. 16 (11th Cir. 2011).[4] The County bears the heavy

---

[3] As Plaintiffs demonstrated in their Motions to Stay and Remand, federal law does not completely preempt Plaintiffs' claims. (ECF No. 19 at 2-3); (ECF No. 18 at 2-6, 9-15) ("Remand Motion"). Thus, as a threshold matter, this Court does not have jurisdiction to consider the County's MTD; this case must be remanded to Boulder County District Court.

[4] Again, this distinction is significant because "if complete preemption does not apply, but the plaintiff's state law claim is arguably [defensively] preempted…the district court, being without removal jurisdiction, cannot resolve the dispute regarding [defensive] preemption." *Bd. of Cnty. Comm'rs of Boulder Cnty. v. Suncor Energy (U.S.A.) Inc.*, 405 F.Supp.3d 947, 964 (D. Colo. 2019) (internal quotation omitted).

13

burden of demonstrating that all of Plaintiffs' claims should be dismissed as a matter of law. *Emerson v. Kansas City Southern Ry. Co.*, 503 F.3d 1126, 1133-34 (10th Cir. 2007) ("Federal preemption is an affirmative defense upon which the defendants bear the burden of proof.") (internal quotations omitted). A defendant may only succeed on a preemption-based motion to dismiss where the federal issue is apparent on the face of the complaint. *See Miller v. Shell Oil Co.*, 345 F.2d 891, 893 (10th Cir. 1965) (affirmative defenses alleged in Rule 12(b)(6) motions are only appropriate where "the defense appears plainly on the face of the complaint itself").

The County fails to meet its burden because the face of Plaintiffs' Complaint contains **no** claims that seek to regulate or control the Airport. Instead of addressing Plaintiffs' actual claims, the County argues that "the pervasive control vested in the FAA with regard to lead in fuel and airport/aircraft noise leaves no room for state law to interfere with the federal regulation of fuel and noise." (MTD at 12). This argument misrepresents both the Complaint and the law.

Throughout its briefing, the County continually attempts to force a square peg into a round hole by conflating inverse condemnation—which provides only for just compensation—with injunction or regulation.[5] (Notice at 2-4, 6, 13-15, 20-22); (MTD at

---

[5] The County claims, for example, that Plaintiffs are attempting to "challenge the availability of leaded fuel at the airport," which the County claims is preempted "because the Airport is required [by its Grant Assurance obligations] to offer leaded fuel." (MTD at 13). But the Complaint contains no call to ban leaded fuel at the airport; instead, Plaintiffs demand compensation for the depositing of leaded fuel particulates on their yards, homes, and vegetable gardens. (Complaint at ¶¶ 111-123). Even if the County's Grant Assurance agreements were relevant to this inverse condemnation action (they are not), the County fails to identify any Grant Assurance obligation it will violate if it pays the constitutionally-mandated just compensation owed for these intrusions.

14

12-14). The County relies on this maneuver to support its preemption arguments. (MTD at 12-14).

But decades of precedent demonstrate that inverse condemnation actions against airport proprietors are **not preempted** because they do not seek to enjoin or regulate airport operations; rather, such actions are the proper remedy for overflight takings and damages. Dozens of courts have agreed and awarded just compensation for inverse condemnation claims against municipal airport proprietors. (Remand Motion at 10, 14-15). United States Supreme Court precedent has established inverse condemnation claims as the proper remedy for affected property owners too. In *U.S. v. Causby*, landowners sued in inverse condemnation for "frequent and regular flights of army and navy aircraft over respondents' land at low altitudes." 328 U.S. 256, 258 (1946). Even though "the United States has complete and exclusive national sovereignty in the air space over this country," *Id.* at 260, flights that "are so low and frequent as to be a direct and immediate interference with the enjoyment and use of the land," constitute a compensable taking. *Id.* at 266. The Court extended this principle in *Griggs v. Allegheny Cnty.*, where landowners sued the county, as airport proprietor, for "regular and almost continuous daily flights," making it "impossible for people in the house to converse or to talk on the telephone." 369 U.S. 84, 87 (1962). Even though the county complied with federal guidelines, it was liable for the taking of an avigation easement as "promoter, owner, and lessor," of the airport. *Id.* at 89.

The County ignores this precedent and cites *City of Burbank v. Lockheed Air Terminal, Inc.* to support its preemption argument. (MTD at 12-13). But *Burbank* is

15

inapposite since it involved "an ***ordinance*** adopted by the City Council…which made it ***unlawful*** for a so-called pure jet aircraft to take off from the…Airport between 11 p.m. of one day and 7 a.m. of the next day." 411 U.S. 624, 625 (1973) (emphasis added). The Court found "the pervasive control vested in EPA and in FAA…seems to us to leave no room for local ***curfews*** or other local ***controls***." *Id.* at 638 (emphasis added). This case is not a *Burbank* fact pattern. The Complaint is ***not*** about curfews, controls, regulations, or an injunction. Again, the ***only*** remedy sought is just compensation for the Airport's activities, which are presumed to continue.

The County fails to cite any authority to support its preemption argument and ignores the substantial precedent holding that inverse condemnation is the proper remedy for overflight takings and damages. The County fails to establish defensive preemption.

## CONCLUSION

Plaintiffs' claims are based on activity that began on March 24, 2022. The two-year statute of limitations period concluded on March 24, 2024 (at the earliest), so the Complaint was timely filed. The County further fails to identify any elements that it claims were insufficiently pled in the Complaint, which contains detailed factual allegations and each of the necessary elements to support Plaintiffs' claims. Finally, the County cites no authority to support its argument that inverse condemnation actions against airport proprietors are preempted; in fact, this argument contradicts mountains of state and federal precedent. The County has failed to meet its burden, and its Motion to Dismiss must be denied.

Respectfully submitted this 29th day of April 2024.

<u>*s/ John R. Sperber*</u>
John R. Sperber
Sean J. Metherell
Faegre Drinker Biddle & Reath LLP
1144 Fifteenth Street, Suite 3400
Denver, CO 80202
Telephone Number: (303) 607-3500
Fax Number: (303) 607-3600
jack.sperber@faegredrinker.com
sean.metherell@faegredrinker.com

Michael J. Hirak
Faegre Drinker Biddle & Reath LLP
2200 Wells Fargo Center, 90 S. 7th Street
Minneapolis, MN 55402
Telephone Number: (612) 766-7000
Fax Number: (612) 766-1600
michael.hirak@faegredrinker.com

Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of April 2024, a true and correct copy of the foregoing **RESPONSE TO DEFENDANT'S MOTION TO DISMISS** was e-filed with the Court through the CM/ECF system which will send notification of such filing to the CM/ECF participants registered to receive service in this case.

*s/ Lynne McWhirt*
Lynne McWhirt, Legal Administrative Assistant