EXHIBIT 4 – Andrews v. United States Complaint

**ORIGINAL**

**FILED**

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

MAY 18 2012

U.S. COURT OF
FEDERAL CLAIMS

JEANETTE D. ANDREWS

        Plaintiff,

v.

        Case No. 12-322 L

UNITED STATES OF AMERICA

        Defendant.

## COMPLAINT FOR INVERSE CONDEMNATION

Plaintiff alleges as follows:

I.

Plaintiff is a resident of the Commonwealth of Virginia, residing at 1908 Promise Road, city of Chesapeake, Commonwealth of Virginia.

II.

This is a claim for inverse condemnation against the United States arising under the Fifth Amendment to the United States Constitution.

III.

Jurisdiction of this action is conferred on this Court by 28 U.S.C. § 1491(a)(1).

IV.

This claim arose on May 23, 2006, as is hereinafter more fully set forth.

V.

1.     Plaintiff is the owner of property located at 2421 and 2433 Blue Ridge Road in Chesapeake, Virginia ("the Property"), which she acquired on May 23, 2006.

2.     Plaintiff's use and enjoyment of the Property was destroyed or substantially interfered with on and after May 23, 2006 by the operation of F/A-18 E/F fighter jets

1

("Super Hornets") from Naval Station Oceana ("NAS Oceana") and Naval Auxiliary Landing Field Fentress ("NALF Fentress") over and around the Property, which constituted a taking by the United States without payment of just compensation.

3. NAS Oceana is located in Virginia Beach, Virginia. At 5,000 acres, NAS Oceana is the Navy's smallest master jet base. NAS Oceana's main facility consists of two paired 12,000 foot and two paired 8,000 foot runways.

4. NALF Fentress in located in the adjoining community of Chesapeake, Virginia. NALF Fentress is the main airfield used for training aircraft stationed at NAS Oceana.

5. Defendant is the United States of America, acting through the Department of Defense, Department of the Navy, in operating NAS Ocean in Virginia Beach, Virginia and NALF Fentress in Chesapeake, Virginia. NALF Fentress is used in conjunction with flight operations at NAS Oceana.

6. The Noise Control Act of 1972, 42 U.S.C. § 4901 *et seq.*, requires Federal agencies and state and local governments to develop measures to control the harmful effects of noise on people.

7. To conform with the Noise Control Act, the Department of Defense initiated the Air Installation Compatible Use Zone ("AICUZ") program to protect the public's health, safety an welfare, and to prevent encroachment on military installations.

8. The AICUZ program, *inter alia*, identifies land uses that are compatible with noise levels emanating from activities on military installations. One part of the AICUZ program is to prepare a noise study to define noise exposure contours, that is, a map showing a graphical display of noise impacts from air operations on the surrounding property. The

AICUZ map generally shows three noise exposure contours: (a) 65-69 dB DNL, (b) 70-74 dB DNL, and (c) ≥ 75 dB DNL and greater.

9. Defendant, by its internal regulations known an Operation Naval Instructions ("OPNAVINST") and by general publication, has determined that properties with a 65 dB DNL noise zone and greater are unsuitable for residential development.

10. Defendant has appeared before local governing bodies in the Cities of Virginia Beach and Chesapeake in opposition to any residential development within the 65 dB DNL noise zones around NAS Oceana and NALF Fentress.

11. The Property is designated as "in field" of operations for NAS Oceana and NALF Fentress, which demonstrates the Navy's exercise of dominion and control over the Property.

12. In November 1999, the F/A-18 E/F Super Hornet entered service with the Navy. The Super Hornet is the Navy's newest strike fighter designed to replace remaining F-14 and aging F/A-18 C/Ds.

13. Shortly after it entered service, the Navy began the process of identifying the naval air stations where the F/A-18 E/Fs would be stationed. Ten squadrons and the First Replacement Squadron ("FRS"), a total of 144 aircraft, were to be based on the East Coast of the United States.

14. In July 2003, the Navy published the Environmental Impact Statement ("EIS") for the basing of the 144 F/A-18 E/Fs. In the EIS, the Navy proposed a total of 8 alternatives with various mixes of squadrons placed among various military installations.

15. On September 4, 2003, the Acting Secretary of the Navy issued the Record of Decision selecting alternative 6. This decision based 8 squadrons and the FRS as NAS Oceana.

16. The first squadrons began to arrive at NAS Oceana in late 2003. Full deployment was completed in 2009.

17. The flight paths of the various patterns at NAS Oceana and NALF Fentress are over and in close proximity to the Property. These flight paths intermittently carry the fighters over and in close proximity to the Property.

18. The F/A-18 E/F fighter produces significantly higher levels of noise and vibration than the principal aircraft it replaced, the F-14. Indeed, the F/A-18 E/F is louder than the F/A-18 C/D, which itself is twice as loud as the F-14.

19. The noise from the flights of the F/A-18 E/F fighters directly over and in close proximity to the Property has substantially interfered with Plaintiff's use and enjoyment of the Property and has diminished the market value of the Property.

20. The substantial interference with the use and enjoyment, and the diminution in market value of the Property constitutes a taking of Plaintiff's private property for pubic use by the Defendant without just compensation.

21. Plaintiff is entitled to just compensation for the value of the property taken and the diminution in value to the remaining property not taken.

22. WHEREFORE, Plaintiff demands a judgment against the United States for just compensation in an amount to be determined at trial which they are entitled to under the Fifth Amendment to the United States Constitution; for an award pursuant to 42 U.S.C. §

4654(c) of reasonable costs, disbursements, and expenses, including reasonable attorney, appraisal, and engineering fees; and for such other relief as justice demands.

Respectfully submitted,

Date Signed: 5/17/12

By: _____
Henry E. Howell, III
The Eminent Domain Litigation Group, P.L.C.
One East Plume Street
Norfolk, VA 23510
Telephone: (757) 446-9999
Facsimile: (757) 446-9008
Email: heh@eminentdomaingroup.us

5