IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:24-cv-00951-CNS-STV

ANDREA LOCKHART, et al.,

    Plaintiffs,

v.

THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF JEFFERSON, COLORADO, as successor in interest to the Jefferson County Airport Authority

    Defendant.

## DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS

### INTRODUCTION

Plaintiffs' opposition to the motion to dismiss, ECF No. 23 (the "Response"), raises the same flawed arguments as those asserted in the parallel proceeding—*Drew Phillip Fuller, et al. v. Jefferson County, Colorado*, Case No. 1:24-cv-00157-DDD-STV (the "Fuller Action")—where another group of Boulder County residents have brought identical time-barred and preempted inverse condemnation claims against Defendant The Board of County Commissioners of the County of Jefferson, Colorado (the "County"). Just as the Fuller Action plaintiffs' response to the County failed to refute the facts that Plaintiffs' claims for inverse condemnation (1) are barred by the applicable two-year statute of limitations in C.R.S. section 13-80-102(1)(h); (2) do not assert the necessary specific allegations for such a claim; and (3) are preempted by federal law—so, too, does the Response in this action.

1

Plaintiffs do not dispute that the Rocky Mountain Metropolitan Airport ("RMMA" or the "Airport") was built in 1960 and that Plaintiffs' suburban development did not exist until the 1980s, meaning that every Plaintiff moved to Superior, Colorado with full knowledge of the existence of the Airport. Plaintiffs also do not deny the fact that a two-year statute of limitations applies to Plaintiffs' claims against the County or that the Complaint was filed more than two years after Plaintiffs knew, or had reason to know, of the County's 2000 Airport Master Plan and the noise information contained therein. Plaintiffs' opposition to the County's motion to dismiss (the "Motion"), ECF No. 14, also fails to point to specific allegations in their Complaint that show that Plaintiffs have been uniquely impacted by the existence of the Airport. Lastly, Plaintiffs fail to overcome the fact that federal law preempts their claims. Accordingly, this action should be dismissed.

## ARGUMENT

**I. PLAINTIFFS' CLAIMS ARE TIME-BARRED BECAUSE THEY HAD ACTUAL OR CONSTRUCTIVE KNOWLEDGE OF THE ALLEGED NOISE LEVELS MORE THAN TWO YEARS BEFORE THE COMPLAINT WAS FILED.**

As set forth in the Motion, the two-year statute of limitations bars Plaintiffs' claims because they are predicated on information disclosed in the 2000 Airport Master Plan—which was issued almost 24 years before this case was filed, and was undeniably available to Plaintiffs during 2020. *See* Complaint Ex. H, ECF No. 1-9, at 16 (acknowledging that the 2000 Master Plan "was added to the [Airport] websites in 2020" at the request of the Rock Creek Home Owners Association ("Rock Creek HOA"), of which Plaintiffs are members). Although Plaintiffs attempt to deny that their inverse condemnation claims are based on the 2000 Master Plan, *see* Response, p.4-5, their

Complaint belies this denial—which, among other things, references a 60 Ldn Contour that "exceeded the proposed future 60 Ldn Contour provided in the 1988 Master Plan." Complaint, ¶¶ 51-53; *see also, e.g.,* Complaint Ex. J, ECF No. 1-11, ¶ 42. Indeed, paragraph 53 of the Complaint **expressly** relies on the fact that "**the 60 Ldn Contour in the 2000 Master Plan exceeded the proposed 60 Ldn Contour provided in the 1988 Master Plan** . . . ." (Emphasis added). Try as they might to assert otherwise, it is clear Plaintiffs have based their claims on noise information that was set forth in the 2000 Master Plan. This leads to the inescapable conclusion that Plaintiffs waited too long (nearly 24 years too long) to file their inverse condemnation claims.

Undeterred, Plaintiffs ask the Court to disregard the noise contour language in the 2000 Master Plan and, instead, focus solely on the fact that noise and lead has allegedly impacted the Plaintiffs since their prior litigation against the County in state court (the "Rock Creek HOA litigation") concluded. In an attempt to avoid the statute of limitations, Plaintiffs erect a strawman: namely, that it was the judicial termination of some of the easements that triggered the two-year statute of limitations. *See* Response, p.5-6. But the noise levels referenced in the 2000 Master Plan existed regardless of the outcome of the Rock Creek HOA litigation. After all, it was not the easements or their termination that allegedly caused Plaintiffs to experience noise impacts. Rather it was the operation of the Airport and its aircraft users that triggered the claims—and that conduct has been occurring since at least 2000 (*i.e.*, almost 24 years before this case was filed).

Indeed, although Plaintiffs raise *some* allegations pertaining to increased operations since the trial court issued its ruling in the Rock Creek HOA litigation—*see,*

3

*e.g.,* Complaint, ¶¶ 72-73, 76, 97, 100—the vast majority of their allegations concern Airport operations that occurred **prior to or during** the pendency of that case and the subsequent appeal. *See id.* at ¶¶ 31-46 (acknowledging the 1988 and 2000 Master Plans, the avigation easements, and the terms thereof), 59-65 (alleged increases in RMMA operations between 2018 and 2022), 66-94 (citing general statistics and studies that are not specific to any of the Plaintiffs as somehow demonstrating that the increased RMMA operations are causing injuries to Plaintiffs' properties).

Additionally, even if some portion of Plaintiffs' allegations are based on the County's alleged actions or omissions after the Rock Creek HOA litigation concluded, Plaintiffs cannot rely on the trial court's March 24, 2022, judgment as the accrual date for the statute of limitations because Plaintiffs' allegations and accompanying exhibits conclusively establish that they knew or should have known about the purported noise conditions underlying the County's alleged inverse condemnation well before the trial court entered its judgment in March 2022. As evidenced by the very existence of the Rock Creek HOA litigation, Plaintiffs knew (anywhere from 2000 to October 2020 when the Rock Creek HOA filed its lawsuit) that Airport operations allegedly increased beyond what Plaintiffs believed was specified in the avigation easements (i.e., the alleged taking) at least three years before the trial court terminated those easements in March 2022. Instead of filing their inverse condemnation claims within two years of October 2020—the latest date by which their claims can be said to have accrued—Plaintiffs chose to wait until March 2024. That choice has consequences.

4

As in the Fuller Action, Plaintiffs' reliance on *Hayden v. Board of County Commissioners of Jefferson County* is unavailing. *See* 580 P.2d 830 (Colo. App. 1978); Response, p.6. In *Hayden*, the County did not enter the plaintiff's property until it obtained the right to do so under a temporary easement to perform construction work in 1968. *Id.* at 834. Unlike here, the plaintiff in *Hayden* did not institute a court proceeding to terminate the construction easement and then proceed to file a separate inverse condemnation claim years later. The *Hayden* easement terminated on its own accord in 1969, and the County's taking was predicated on the construction work performed **after** that date. *See id.* Here, by contrast, Plaintiffs' claims are based on the County's acts or omissions **that were in existence as far back as 2000** when the Airport issued the 2000 Master Plan.

The second case Plaintiffs rely on—*McIntyre v. Board of County Commissioners of the County of Gunnison, Colorado*—illustrates why the statute of limitations applies here. *See* 251 F. App'x 240 (10th Cir. 2007); Response, p.6-7. There, the plaintiffs accused Gunnison County of impermissibly allowing the public to use a trail that went across their property, but were enjoined from preventing Gunnison County from permitting such public access for the duration of the quiet title proceeding. *Id.* at 241-42. The plaintiffs initially brought an inverse condemnation counterclaim in the quiet title proceeding but voluntarily dismissed that counterclaim without prejudice. *See id.* The plaintiffs then waited past the two-year statute of limitations to file their inverse condemnation claim against Gunnison County in federal court. *See id.*

In affirming the district court's dismissal based on the statute of limitations, the Tenth Circuit concluded that plaintiffs' inverse condemnation claim accrued when

5

plaintiffs were enjoined from preventing the public from using their property during the prior state-court quiet title action.  *See id.* at 243-46.  The fact that the plaintiffs ultimately prevailed in the underlying action and were able to prevent Gunnison County's trail from crossing their property was not dispositive of the accrual question.  *See id*.  Stated differently, what mattered was not when Gunnison County officially lost their right to intrude upon plaintiffs' property, but instead **when the plaintiffs knew that their property had been injured by Gunnison County's action**, which occurred on the date the county successfully enjoined the plaintiffs from preventing the public from accessing their property via the trail.  *See id.*

As in *McIntyre*, what matters for the purposes of accrual is not the date the County lost the benefit of the avigation easements, but instead the date Plaintiffs knew or should have known they had been injured by the alleged conduct that caused the purported taking (i.e., the flight school operations at RMMA that Plaintiffs seek to abate).

Plaintiffs also assert in a footnote that their alleged constructive notice of the noise levels reported in the 2000 Master Plan is contrary to the County's position in the Rock Creek HOA litigation that "the purpose of the noise contours in the Master Plan is to help establish appropriate uses around the airport, not to accurately present actual conditions."  *See* Response, p.5 n.1.  This argument should be disregarded because it relies on a document that has not been incorporated by reference into the Complaint.

But even if the Court elects to take judicial notice of the County's prior trial brief, the cited positions are not inconsistent.  In its Motion, the County asserts that Plaintiffs had actual or constructive notice of increased noise levels at RMMA by reason of the

6

language in the 2000 Master Plan.  By contrast, the County's cited position in its prior trial brief was merely that the noise levels in the 2000 Master Plan were intended to approximate noise levels.  This does not change the fact that Plaintiffs now rely on the approximated noise levels in the 2000 Master Plan as the basis for their claims.

## II. THE COMPLAINT FAILS TO ALLEGE THE REQUIRED ELEMENTS FOR AN INVERSE CONDEMNATION CLAIM.

As set forth in the County's Motion, the Complaint fails to allege a factual predicate for the inverse condemnation claims.  Specifically, the Complaint relies on conclusory allegations that the noise and vibrations from the flights substantially interfere with Plaintiffs' use and enjoyment of their property and lower its market value without supporting these conclusions with any specific facts.

Neither Plaintiffs' Response nor their Complaint say anything about the altitude or frequency of specific flights or offer facts to support the conclusory allegation that the noise and vibrations from aircraft operating at the Airport have lowered the market values of Plaintiffs' homes.  *See* Motion, p.10-11.  The Complaint's "formulaic recitation of the elements of a cause of action" for inverse condemnation "will not do," and the Court is "free to reject plaintiff's legal conclusions couched as factual allegations." *Andrews v. United States*, 108 Fed. Cl. 150, 159 (2012) (cleaned up).

Plaintiffs try in vain, as the Plaintiffs in the Fuller Action did, to distinguish *Andrews*. *See* Response, p.12-13.  Plaintiffs assert that *Andrews* is inapposite because the deficient complaint was only 5 pages and 22 paragraphs in comparison to their Complaint, which is 37 pages long and contains 143 paragraphs.  *Id.* at p.12.  However, the *Andrews* court was not concerned with the length of plaintiff's complaint.  Rather, there, as here, the

7

complaint alleged in a conclusory fashion that flights from a nearby military facility flew directly over her property and that the noise and vibrations therefrom substantially interfered with the use and enjoyment of her property and lowered its market value without citing any specific facts to support those allegations.  See 108 Fed. Cl. at 159-60.

Even though the Complaint here contains more paragraphs than the one in *Andrews*, the additional paragraphs are not sufficient to satisfy Plaintiffs' pleading burden. For instance, the Complaint alleges that take-offs and landings at RMMA increased from 170,000 in 2018 to "more than 260,000 in 2022" and that "[b]ased on the 2022 numbers, on average, a flight took off or landed every two minutes" at RMMA.  Complaint, ¶¶ 59-60.  Plaintiffs cite no support for these assertions, and none can be found in any of the exhibits accompanying the Complaint.  The same is true for the assertion that "[f]lights from the Airport Operations have been tracked as low as 150-350 feet above" the homeowners' properties and that RMMA's operations "routinely" include flights below navigable airspace. *Id.* at ¶ 65. Who tracked the altitude of the flights? The homeowners? A neutral third party? The Complaint provides no answers. And these same deficiencies also apply to Plaintiffs' allegations pertaining to noise levels allegedly measured "in and within the vicinity" of the homeowners' properties. *See id.* at ¶¶ 81-83.  "Naked assertions" and allegations masquerading as legal conclusions are not entitled to the presumption of proof in ruling on a motion to dismiss. *Accord Frey v. Town of Jackson, Wyo.*, 41 F.4th 1223, 1232 (10th Cir. 2022).

Plaintiffs claim that the County's reliance on *Thompson v. City and County of Denver* "is misplaced."  *See* 958 P.2d 525 (Colo. App. 1998); Response, p.9.  Not so.

Plaintiffs assert that their allegations satisfy the pleading requirements from *Thompson* because the Complaint contains allegations of "(1) physical takings of their properties entitling them to just compensation for the takings plus remainder damages; and (2) inverse damages for harms not caused by a physical taking." Response, p.9-10. But none of this changes the simple fact that the Complaint fails to offer anything more than "labels and conclusions." *See Andrews*, 108 Fed. Cl. at 159.

Plaintiffs also fail to differentiate this case from the ruling in *Claassen v. City and County of Denver* that claimed injuries of noise, pollution, and vibration were not different than those suffered by the general public, thus defeating "'damaging' claims." *See* 30 P.3d 710, 714 (Colo. App. 2001). Even assuming that *Thompson* and *Claassen* somehow limit the necessary pleading requirements only to "damages" claims under Colorado's Takings Clause, this argument misses the point. Rather than coming forth with citations to specific, non-conclusory facts from Complaint or the exhibits thereto demonstrating that Plaintiffs' properties have suffered more than a depreciation in value— or indeed, **any** facts demonstrating that the property values have actually decreased— Plaintiffs' response does nothing more than to point out that the requirements from *Thompson* and *Claassen* should apply only to Plaintiffs' third claim. By not meaningfully addressing the lack of specific, non-conclusory allegations in their Complaint, Plaintiffs have failed to demonstrate that they have met the minimum pleading requirements.

III. **PLAINTIFFS' CLAIMS ARE PREEMPTED BY FEDERAL LAW.**

Plaintiffs' challenges to the noise at RMAA and the use of leaded fuel for general aviation aircraft utilizing the Airport are preempted by federal law, specifically the Airport

and Airway Improvement Act, 49 U.S.C. § 47107 ("AAIA"); the related Grant Assurance obligations assumed by the County; and the Airport Noise and Capacity Act, 49 U.S.C. § 47521, *et seq.* ("ANCA).  *See* Motion, p.12-14.  In response, Plaintiffs assert that there "are *no* claims that seek to regulate or control the Airport."  Response, p.14.

This is simply erroneous.  In the real world, when hundreds of homeowners sue an airport sponsor complaining of noise and lead there is most definitely an effort to ***regulate and control*** the Airport.  The County does not enjoy unlimited funds with regard to its responsibility for operating the Airport.  If Plaintiffs force the County to pay some unknown but presumably large amount of damages, that impacts the Airport's bottom line and puts the County in an untenable position: either comply with the Plaintiffs' demands and a possible damages award, or comply with the federal Grant Assurances which, among other things, require the Airport to be open and reasonably available to all aeronautical uses, including touch-and-go and other pilot training exercises.  *See, e.g., Aircraft Owners & Pilots Ass'n v. City of Pompano Beach, Fl.*, No. 16-04-01, 2005 WL 32722717 (F.A.A.), at *20 (Dec. 15, 2005) (Director's Determination) ("Without supporting justification from FAA Flight Standards and/or FAA Air Traffic, the FAA Airports Office cannot approve the access restrictions for either stop-and-go operations or intersection take-offs based on safety or efficiency reasons as being consistent with" federal law).

## CONCLUSION

For the foregoing reasons, and for the reasons provided in its Motion, the County requests that the Complaint and action be dismissed.

10

Respectfully submitted this 7th day of May, 2024.

*/s/ M. Roy Goldberg*
M. Roy Goldberg
STINSON LLP
1775 Pennsylvania Avenue N.W., Suite 800
Washington, D.C. 20006
Telephone: (202) 728-3005
Email: roy.goldberg@stinson.com

Nathaniel T. Vasquez
**STINSON LLP**
1144 Fifteenth Street, Suite 2400
Denver, CO 80202
Telephone: (303) 376-8424
Email: nathaniel.vasquez@stinson.com

*Attorneys for Defendant Board of County Commissioners of the County of Jefferson, Colorado*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on May 7, 2024, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system. Any other counsel of record will be served in accordance with the Federal Rules of Civil Procedure.

*/s/ M. Roy Goldberg*
M. Roy Goldberg