IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:24-cv-00951-CNS-STV

ANDREA LOCKHART, et al.,

    Plaintiffs,

  v.

THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF JEFFERSON, COLORADO, as successor in interest to the Jefferson County Airport Authority

    Defendant.

## DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION TO REMAND

### INTRODUCTION

Defendant The Board of County Commissioners of the County of Jefferson, Colorado (the "County")—which owns and operates the Rocky Mountain Metropolitan Airport ("RMMA" or the "Airport")—opposes Plaintiffs' motion to remand, ECF No. 18. Removal of this case from the Boulder County District Court was proper under 28 U.S.C. §§ 1331, 1441, and 1446; the Airport and Airway Improvement Act, 49 U.S.C. § 47107 ("AAIA"); and the Airport Noise and Capacity Act of 1990, 49 U.S.C. § 47521, *et seq*. ("ANCA"). The claims for inverse condemnation by Plaintiffs—all of whom chose to purchase or rent homes close to the preexisting Airport—relate directly to the federal government's pervasive control over the National Airspace System, as implemented through federal statutes, regulations, and policies, including the AAIA, the ANCA, and the

regulations promulgated and enforced by the U.S. Federal Aviation Administration ("FAA") to administer, implement, and enforce those statutes.

Plaintiffs challenge the noise and lead associated with the normal operation of the Airport, a federally funded commercial passenger, cargo, and general aviation airport that predates Plaintiffs' residential community by more than two decades. The County is obligated, as the Airport's "sponsor," to take all necessary actions to ensure that the Airport's aeronautical and related facilities are reasonably accessible to aircraft owners and pilots. This includes permitting aircraft operators to generate aircraft-related noise, and to fill their gas tanks with fuel that the FAA has approved. So for now, the County must allow general aviation aircraft to use fuel that contains lead or risk being sanctioned by the FAA.

In a similar case from the Southern District of Ohio, the court denied a motion to remand a case that challenged airport noise. The court stated:

> **In light of the federal government's extensive control over aircraft noise regulation, . . . the federal interest in this case is substantial.** The Court, therefore, concludes that a *prima facie* showing has been made that Plaintiffs' nuisance claim, although stated in terms of state law, "arises under" federal law, and that this Court has subject matter jurisdiction over same.

*City of Tipp City v. City of Dayton*, 204 F.R.D. 388, 396 (S.D. Ohio 2001). The same result should occur here. In light of the federal government's extensive control over aircraft noise, use of leaded fuel, and pilot training flights, the federal interest in this case is substantial, and, although Plaintiffs' claims are presented in terms of state law, they arise under federal law and, therefore, the motion to remand should be denied.

2

## STATEMENT OF FACTS

On March 21, 2024, Plaintiffs filed their Complaint in the Boulder County, Colorado District Court, Case No. 2024CV30251. *See* Exhibit 1 to Notice of Removal, ECF No. 1-1 (the "Complaint"). It is a replica of the parallel action filed by other Boulder County residents living near the Airport—*Drew Phillip Fuller, et al. v. Jefferson County, Colorado*, Case No. 1:24-cv-00157-DDD-STV (the "Fuller Action"). Plaintiffs seek damages for inverse condemnation based on, among other things, the Airport's allowance of the use of leaded fuel for piston-engine aircraft (which cannot lawfully use unleaded fuel) and the noise and vibrations emanating from aircraft utilizing the Airport.

### Federal Control Over Aviation and Airports

The federal government enjoys plenary power over air transportation in the United States. "Planes do not wander about in the sky like vagrant clouds. **They move only by federal permission, subject to federal inspection, in the hands of federally certified personnel and under an intricate system of federal commands.**" *Nw. Airlines v. State of Minn.*, 322 U.S. 292, 303 (1944) (Jackson, J., concurring) (emphasis added). As a practical matter, if the "Not in My Backyard" movement was successful, this country would have far fewer operational airports.

### The Airport and Airways Improvement Act

Many airports, including RMMA, are federally funded through federal grants or other payments. *See* Complaint, ¶ 36. This funding system relieves local taxpayers and airport patrons from having to pay all of the considerable expenses that exist to construct, maintain, and operate an airport. FAA provides grants to airport sponsors so that they

3

can build and improve airports to "maintain a safe and efficient nationwide" airport system. 49 U.S.C. §§ 47104(a), 47105(a); *see also* 49 U.S.C. § 47102(26) (defining "sponsor"). Such federal funding of airports comes with strings attached. Under the AAIA, airports must comply with the statutory obligation to make the airport "available for public use on reasonable conditions and without unjust discrimination." 49 U.S.C. § 47107(a)(1). In addition, airports must comply with their federally-imposed and enforced Grant Assurance obligations, including the requirement in Grant Assurance 22(a) that it "will make the airport available as an airport for public use on reasonable terms and without unjust discrimination to all types, kinds and classes of aeronautical activities . . . ." *Palm Beach Cnty. v. FAA*, 53 F.4th 1318, 1321 (11th Cir. 2022).

FAA may enforce an airport's Grant Assurance-based obligations by several methods, but the most effective is the threat or actual withholding of other AIP grants. *See* 49 U.S.C. § 47111. The FAA also can request an injunction in federal court and, if the misuse of revenue is at issue, pursue civil penalties of up to three times the diverted funds (in addition to reimbursement) as well as withhold all federal transportation grants from the airport's sponsor. *See* 49 U.S.C. § 46106.

### The Current Requirement to Provide and Use Leaded Fuel for General Aviation Aircraft

Aviation gasoline ("avgas") is the aviation fuel most commonly used in piston-engine aircraft within the general aviation community. Avgas remains the only transportation fuel in the United States to contain lead. The Declaration of M. Roy Goldberg, Esq. (the "Goldberg Declaration"), attached as <u>Exhibit A</u> to the County's motion to dismiss, *see* ECF No. 14-1, authenticates three documents that reflect the FAA's

4

position regarding the need for continued availability of leaded fuel at airports which serve general aviation aircraft.  *See* Goldberg Declaration, Exhibits 1-3, ECF Nos. 14-2, 14-3, and 14-4.  This includes FAA guidance that:

> **A ban or restriction on the sale or use of 100LL avgas at a federally obligated airport is inconsistent with Grant Assurance 22, Economic Nondiscrimination (49 USC 47107(a)(1)) and conflicts with the self-service provision.**

Exhibit 1, ECF No. 14-2 (emphasis added).  (For convenience, the County is attaching those exhibits hereto as well.)  In short, the County cannot unilaterally ban the sale of leaded fuel at the Airport without risking severe financial sanctions by the FAA.  This puts Plaintiffs' claims directly at odds with the County's federal obligation.

### The Airport Noise and Capacity Act

In 1973, the Supreme Court held that the pervasive scope of federal regulation of the airways implied a congressional intention to preempt municipal aircraft noise restrictions based upon the police power.  *See City of Burbank v. Lockheed Air Terminal, Inc.,* 411 U.S. 624, 638-40 (1973) (upholding injunction barring municipal aircraft crews as subject to federal preemption).  ANCA operates separate from the AIP assurances and, in conjunction with its implementing regulations, requires any airport considering limits on jets, helicopters and certain other aircraft to first perform an analysis of the proposal and submit it to the FAA for possible approval.  49 U.S.C. §§ 47521–34 generally prohibit "airport noise and access restrictions on the operation of stage 2 and stage 3 aircraft" unless those restrictions meet stringent statutory requirements. *Accord* 49 U.S.C. § 47524.  FAA's ANCA regulations, codified at 14 C.F.R. Part 161, set out the process

for analyzing and approving new noise restrictions, *see* 14 C.F.R. §§ 161.101–.417, and the penalties for failure to comply with ANCA. See 14 C.F.R. §§ 161.501–.505.

Although ANCA does not apply to all aircraft, it applies to the JSX aircraft operating at RMMA - Complaint, ¶ 63 - and it also provides a ceiling for aircraft noise exposure and that FAA considers noise in connection with its decision to certify smaller, propeller planes.  See https://www.FAA.gov/noise/levels.  Pursuant to 14 C.F.R. § 36.1(a)(2), FAA's established noise standards apply to propeller driven aircraft.  In addition, an airport such as RMMA is exposed to 14 C.F.R. Part 16 sanctions imposed by FAA for violating the AAIA and Grant Assurance 22 if the airport unjustly discriminates against a type of aircraft in the imposition of noise controls.  *See Palm Beach County, supra,* 53 F. 4th at 1338 (upholding FAA determination that airport's restrictions on aircraft noise violated Grant Assurances).

### **Plaintiffs' Claims**

Despite the fact that Plaintiffs came to their properties with full knowledge that the Airport existed, they nevertheless seek compensation for their alleged exposure to Airport-generated noise and leaded fuel.  Among other things, Plaintiffs allege that "increased Airport Operations have caused excessive noise, vibrations, fuel pollution, and other airplane-created impacts (collectively, 'Airport Impacts'), which directly and substantially interfere with the Homeowners' use and enjoyment of their Properties and that significantly affect the marketability and value of the Properties."  Complaint, ¶¶ 12; 13, 67-70, 75, 81-84, 118.

CORE/3530173.0006/189206205.1

On April 10, 2024, the County filed a motion to dismiss the Complaint and action, ECF No. 14, which remains pending—as do the other Boulder County residents' motion to remand and the County's motion to dismiss in the Fuller Action, which involve the same facts outlined above and the same legal issues analyzed throughout.

## APPLICABLE STANDARD

The threshold requirement for removal under 28 U.S.C. sections 1331 and 1441 is a finding that a contains a cause of action that is within the original jurisdiction of the district court. The key question is whether a complaint contains a claim that "aris[es] under the Constitution, laws, or treaties of the United States." 28 U.S.C. §§ 1331, 1441.

## ARGUMENT

Removal of the case is appropriate under 28 U.S.C. § 1441(a) because this Court would have had original subject matter jurisdiction over Plaintiffs' claim pursuant to 28 U.S.C. § 1331 had Plaintiffs elected to file the action initially in federal court. This is because of the pervasive regulation of airport operations under the AAIA and ANCA and the fact that if the County modifies its operation of the Airport pursuant to the demands of Plaintiffs, the County will violate the AAIA and federal Grant Assurances.

**I. REMOVAL IS PROPER BECAUSE OF THE FEDERAL GOVERNMENT'S PERVASIVE CONTROL OVER AIRCRAFT NOISE REGULATION AND THE AVAILABILITY OF LEADED AVIATION FUEL**

The Supreme Court has recognized that federal question jurisdiction exists over claims asserted under state law if the state law claims implicate substantial federal questions. *See Grable & Sons Metal Prods., Inc. v. Dante Eng'g & Mfg.*, 545 U.S. 308, 314–15 (2005). This doctrine "captures the commonsense notion that a federal court

7

ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law," in part to promote the "uniformity that a federal forum offers on federal issues." *Id*. at 312.  According to the Supreme Court, the test for whether a federal court has federal question jurisdiction is not whether a federal statute provides a private right of action parallel to the state-law claim alleged by the plaintiff, but whether the "state-law claim necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities."  *Id*. at 314.  That is precisely the case here, given how Plaintiffs are directly challenging the County's efforts to comply with its federal obligations under the AAIA and ANCA.

"Aviation is unique among transportation industries" in that "it is the only one whose operations are conducted almost wholly within Federal jurisdiction . . . [t]hus, the Federal Government bears virtually complete responsibility for the promotion and supervision of this industry."  Sen. Rep. No. 1811, 85th Cong., 2d Sess. 5 (1958).  FAA is tasked with "develop[ing] plans and policy for the use of the navigable airspace and assign[ing] by regulation or order the use of the airspace necessary to ensure the safety of aircraft and the efficient use of airspace."  49 U.S.C. § 40103(b)(1).

In light of the federal government's extensive control over aircraft noise regulation and the availability of safe and approved aircraft fuel, the federal interest in this case is substantial.  As a result, the plaintiffs' claims, although stated in terms of state law, "arise under" federal, which provides this Court with the requisite subject matter jurisdiction.  This is what occurred in *Tipp City, supra*.  Although the court found that the state law

nuisance claim based on failure to implement FAA tower orders regarding noise abatement at the airport was not completely preempted by the Airline Deregulation Act [an argument not being made by Defendant here], the court held that the nuisance claim arose out of federal law, which afforded subject matter jurisdiction, as resolution of the state law claim would require resolution of a substantial question of law of whether defendant was in compliance with federal requirements. *See* 204 F.R.D. at 394.

The *Tipp City* court stated that "[a]lthough Defendant's complete preemption argument is not persuasive, the Court feels compelled, due to the nature of Plaintiffs' pleadings, to address whether their nuisance claim arises under federal law, thus rendering federal subject matter jurisdiction proper." 204 F.R.D. at 394-95; *see also Long v. Bando Mfg. of America, Inc.*, 201 F.3d 754, 759 (6th Cir. 2000) (the Supreme Court "clearly left open the possibility of federal jurisdiction even in the absence of an express or implied federal cause of action, if a substantial federal question of great federal interest is raised by a complained framed in terms of state law"). The *Tipp City* court explained that the complaint "appears to raise a substantial question of federal law," including the airport's obligation to comply with FAA orders regarding the airport control tower. 204 F.R.D. at 395. The court added that: "In light of the federal government's extensive control over aircraft noise regulation, . . . the federal interest in this case is substantial." *Id*. at 396.

In *City of Burbank v. Lockheed, supra*, the Supreme Court, referencing the Supremacy Clause, concluded that "the pervasive nature of the scheme of federal regulation of aircraft noise" had completely preempted the states' traditional police power

9

to regulate noise in that area. 411 U.S. at 633. The Court reasoned that "pervasive control vested in [federal agencies] under the 1972 [Noise Control] Act seems to us to leave no room for local curfews or other local controls." *Id*. at 638.

Similarly here, the pervasive control vested in FAA with regard to lead in fuel and airport/aircraft noise leaves no room for the use of state and local laws to interfere with the federal regulation of fuel and noise. *See also, e.g., Friends of the E. Hampton Airport, Inc., v. Town of E. Hampton*, 841 F.3d 133, 147-55 (2d Cir. 2016) (airport users seeking preliminary injunction barring enforcement of town's local laws, which placed limit on weekly flights and established curfews prohibiting aircraft from using town's airport during nighttime hours, were likely to succeed on their preemption claim); *Pirolo v. City of Clearwater,* 711 F.2d 1006, 1008 (11th Cir. 1983) (preempting local ordinances "prohibiting night operations" and "prescribing air traffic patterns"); *San Diego Unified Port Dist. v. Gianturco,* 651 F.2d 1306, 1308, 1312 (9th Cir.1981) (preempting "curfew on aircraft flights").

In *Brown v. Alaska Air Group*, the Eastern District of Washington denied a motion to remand a case that had been removed because the plaintiff's claim for discrimination was preempted by the Air Carrier Access Act, 49 U.S.C. § 41705. *See* Case No. CV-11-0091-WFN, 2011 WL 2746251, at *5 (E.D. Wash. July 14, 2011). The court held that removal was proper because the plaintiff's claim for violation of the Washington state law against discrimination fell within an area so pervasively regulated by federal law that preemption conferred removal jurisdiction. *See id.* Significantly, the court rejected the

plaintiff's argument that there was "no federal jurisdiction because there is no federal remedy under the ACAA," stating:

> Plaintiff fails to acknowledge the ACAA's administrative remedy scheme that includes contacting a complaint resolution officer for immediate remedies, filing a complaint with the Secretary of Transportation who can initiate an investigation and enforce actions, and appealing any decision to federal court.

*Id.* (citing 49 U.S.C. §§ 41705, 46101, 46110; 14 C.F.R. §§ 382.151–153, 382.159).

Similarly here, Plaintiffs' claims for inverse condemnation are preempted by the AAIA and ANCA, which pervasively regulate the manner in which airports may operate, including the provision of leaded fuel and the lack of local restrictions on aircraft noise.

An additional reason why removal is necessary is the fact that Plaintiffs assert that the Court handling this matter cannot consider any factors other than "issues relating to the just compensation owed for governmental use of private property and cannot address collateral issues that change the scope of the proceedings."  Complaint, ¶ 2 (citing *Ossman v. Mountain States Tel. & Tel. Co.*, 520 P.2d 738, 742 (Colo. 1974); *Dep't of Transp. v. Auslaender*, 94 P.3d 1239, 1241 (Colo. App. 2004)).  This means that if the case proceeds in state court County may be prohibited from introducing the arguments as to why Plaintiff's claims are fundamentally inconsistent with the County's obligations under the AAIA and ANCA.

## II. REMOVAL IS ALSO PROPER BECAUSE OF THE EXISTENCE OF COMPLETE PREEMPTION OVER PLAINTIFFS' CLAIMS

The pervasive interest in the government's control over aircraft noise regulation and the availability of fuel supplies is sufficient for subject matter jurisdiction (and

removal).  However, a separate and independent basis for removal is the fact that federal law completely preempts Plaintiffs' claims.

The Supremacy Clause provides that the laws of the United States "shall be the supreme law of the Land; . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. Art. VI, cl. 2.  Pursuant to this provision, Congress has the power to enact statutes that preempt state law. *Nw. Cent. Pipeline Corp. v. State Corp. Comm'n of Kan.*, 489 U.S. 493, 509 (1989).  "Congressional intent to preempt state law can be either express or implied. *See, e.g., Air Transp. Ass'n of Am. v. Cuomo,* 520 F.3d 218, 220-21 (2d Cir. 2008) (*per curiam*).  Express preemption is present when "a federal statute expressly directs that state law be ousted." *Id.* at 220.  Implied preemption comes in two varieties, known as field preemption and conflict preemption.  Conflict preemption arises when state law "actually conflicts with federal law," *id.* at 220, such that it is not possible to comply with both and "state law stands as an obstacle to the accomplishment" of the congressional objective. *Hillsborough Cnty. v. Automated Med. Labs,* 471 U.S. 707, 713 (1985).

One "corollary of the well-pleaded complaint rule developed in the case law . . . is that Congress may so completely preempt a particular area that any civil complaint raising this select group of claims is necessarily federal in character." *Metro. Life Ins. Co. v. Taylor,* 481 U.S. 58, 63-64 (1987).  "In such a case, even if the only claim in a complaint is a state law claim, if that claim is one that is 'completely preempted' by federal law, federal subject matter jurisdiction exists and removal is appropriate." *Toumajian v. Frailey,* 135 F.3d 648, 653 (9th Cir.1998); *see also Caterpillar Inc. v. Williams,* 482 U.S. 386, 393

12

(1987) (a federal statute's preemptive force may be "so extraordinary that it converts an ordinary state common-law complaint into one stating a federal claim for the purposes of the well-pleaded complaint rule.") (cleaned up).

> Under the complete-preemption doctrine,
>
> federal law does not merely preempt a state law to some degree; rather, it substitutes a federal cause of action for the state cause of action, thereby manifesting Congress's intent to permit removal. Thus, if a plaintiff files suit in state court, ostensibly upon a state cause of action, and the defendant removes the case on the basis of complete preemption, the federal district court that is persuaded that plaintiff's claim is completely preempted will re-characterize the plaintiff's cause of action as a federal claim for relief, making removal proper on the basis of federal-question jurisdiction.

14C Fed. Prac. & Proc., Juris. § 3722.2 (Rev. 4th ed.) "In this sense, the complete-preemption doctrine overrides such fundamental cornerstones of federal subject-matter jurisdiction as the well-pleaded complaint rule and the principle that the plaintiff is master of the complaint. However, since a claim that truly is created by federal law does appear on the face of the well-pleaded complaint, the complete preemption rule often is regarded as a corollary of, rather than an exception to, the well-pleaded complaint rule, although some courts also have referred to it as an exception to that rule." *Id.*

The fact that Plaintiffs style their claim as one for inverse condemnation under state law does not change the fact that this case is completely preempted by federal law. In *Illig v. Union Electric Company*, owners of servient estates filed a state court action alleging that a public utility lacked the right to install or use power lines on their properties after a railroad had abandoned its easement over the properties. *See* 334 F. Supp. 2d 1151, 1152 (E.D. Mo. 2004). The case was removed and the court denied the plaintiff's motion for remand. The court stated that the plaintiffs' arguments for remand were "belied

13

by the Supreme Court holding that 'a case arose under' federal law where the vindication of a right under state law necessarily turned on some construction of federal law." *Id*. at 1154 (citing *Franchise Tax Bd. of the State of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 9 (1983)).

Similarly here, Plaintiffs are seeking inverse condemnation but their "claimed right to relief under state law requires resolution of a substantial question of federal law"—namely, whether Plaintiffs can utilize inverse condemnation to pursue the federally-unlawful objective of terminating or significantly reducing Airport operations by challenging the use of leaded fuel and the noise emanating from the Airport. "[I]n certain cases federal-question jurisdiction will lie over state-law claims that implicate significant federal issues." *Grable,* 545 U.S. at 312 (citing *Hopkins v. Walker*, 244 U.S. 486, 490-91 (1917)). Having federal jurisdiction lie over such issues "captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law," to promote the uniformity a federal forum offers. *Id.*

The issue of whether the AAIA or ANCA completely preempt Plaintiffs' inverse condemnation claims is a novel question under the complete preemption doctrine; a circumstance that Plaintiffs conveniently ignore when they criticize the County's Notice of Removal for failing to "cite a single case holding that the federal statutes it cites, ANCA and AAIA—or any federal regulations promulgated thereunder—completely preempt state law inverse condemnation claims." Motion to Remand, p.11. In fact, no court has

14

addressed this question, and, as such, the Court may look to similar complete-preemption cases like *Friends of the East Hampton Airport* and *Illig* for guidance.

Plaintiffs also contend that ANCA does not apply to the vast majority of aircraft overflights at issue in this litigation." *Id.* at p.12.  Not so.  ANCA provides a ceiling for aircraft noise exposure, and the FAA considers noise in connection with its decision to certify smaller, propeller planes.  *See* https://www.FAA.gov/noise/levels (last accessed May 1, 2024).  Pursuant to 14 C.F.R. § 36.1(a)(2), the FAA's established noise standards apply to propeller-driven aircraft.  Plaintiffs also disregard the fact that airports like RMMA are exposed to part 16 sanctions for violating the AAIA and grant Assurance 22 if the airport unjustly discriminates against a type of aircraft in the imposition of noise controls.  *See, e.g., Palm Beach Cnty.*, 53 F.4th at 1338 (upholding an FAA determination that an airport's restrictions on aircraft noise violated Grant Assurances).

### III.  **PLAINTIFFS' REQUEST FOR ATTORNEYS' FEES SHOULD BE DENIED**

Even if the remand motion is granted, there is no basis for an award of attorneys' fees under 49 U.S.C. § 1447(c).  The Supreme Court has made clear that "absent unusual circumstances, courts may award attorney's fees under section 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal.  Conversely, when an objectively reasonable basis exists, fees should be denied." *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005).  For the reasons set forth above, the County possessed an objectively reasonable basis for removal of the Complaint and action.  *See Waukegan Port Dist. v. N. Shore Gas Co.*, 371 F. Supp. 3d 452, 459 (N.D. Ill. 2019) ("Although the Court has held that federal subject-matter jurisdiction does not exist here,

15

the contours of the 'substantial federal question' doctrine in the context of CERCLA cleanups are somewhat indistinct, and authority from this circuit is sparse. Because the Court is thus unable to conclude that North Shore Gas lacked a reasonable basis for removal or otherwise acted in bad faith, the . . . request for attorneys' fees is denied.").

## CONCLUSION

For the reasons set forth above, the County requests that Plaintiffs' motion to remand be denied.

Respectfully submitted this 7th day of May, 2024.

*/s/ M. Roy Goldberg*
M. Roy Goldberg
**STINSON LLP**
1775 Pennsylvania Avenue N.W., Suite 800
Washington, D.C. 20006
Telephone: (202) 728-3005
Email: roy.goldberg@stinson.com

Nathaniel T. Vasquez
**STINSON LLP**
1144 Fifteenth Street, Suite 2400
Denver, CO 80202
Telephone: (303) 376-8424
Email: nathaniel.vasquez@stinson.com

*Attorneys for Defendant Board of County Commissioners of the County of Jefferson, Colorado*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on May 7, 2024, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system.  Any other counsel of record will be served in accordance with the Federal Rules of Civil Procedure.

*/s/ M. Roy Goldberg*
M. Roy Goldberg